In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 06-3461

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ARISTEED CANNON,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 CR 907—**Milton I. Shadur**, *Judge.*

_____

ARGUED SEPTEMBER 28, 2007—DECIDED AUGUST 20, 2008

_____

Before POSNER, FLAUM, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge.* Aristeed Cannon was convicted of distributing crack cocaine in violation of 21 U.S.C. § 841(a)(1). On appeal he makes several evidentiary arguments—most notably, an attack on the admission of a videotaped deposition taken pursuant to Rule 15 of the *Federal Rules of Criminal Procedure*—and also challenges the sufficiency of the evidence used to convict him. Finally, he asks us to reconsider our case law permitting, in

accordance with *Harris v. United States*, 536 U.S. 545 (2002), the use of judicially found facts in the imposition of a statutory minimum sentence. We affirm Cannon's conviction and sentence.

## I. Background

Cannon was apprehended during a controlled drug buy in Maywood, Illinois. Operating with a confidential informant, local police and several DEA agents arranged to purchase two ounces—two "zones," in the drug dealer's parlance—of crack cocaine from Cannon. Everything about the deal operated smoothly except the audio-recording equipment that was to have memorialized the transaction; for reasons unknown, the system failed.

Cannon arrived on schedule with his brother (who was also apprehended and found in possession of powder cocaine), approached the government's undercover vehicle, and spoke with DEA Agent Charles Ellison. Cannon then gave Ellison two baggies of crack cocaine (each containing roughly an ounce) in exchange for $1,500 of recorded currency. With the transaction completed, Ellison gave the arrest signal to his surveillance team. Cannon attempted to flee, but DEA Agent Gary Jackson, who was observing the deal from a block away in his parked car, quickly apprehended him in a nearby yard. Cannon was searched and found in possession of the $1,500 in recorded currency, several Ziploc bags, and a small scale.

A jury convicted Cannon of distributing crack cocaine. During trial, the government played a videotaped deposi-

tion of Agent Jackson in lieu of his live testimony. Video-taped testimony is the exception in criminal trials, but the district court allowed it here because Jackson was in the Marine Corps Reserves and was deployed to Iraq before the start of trial, thus satisfying the "exceptional circumstances" requirement of Rule 15 of the *Federal Rules of Criminal Procedure*. Cannon and his counsel were present for the deposition, and Jackson was subjected to cross-examination.

At sentencing the district court found, over Cannon's objection, that Cannon had distributed 54 grams of crack cocaine. That finding differed from the jury's finding that Cannon had distributed between 5 and 50 grams of crack. The drug-quantity evidence at trial was conflicting; the weights measured at the local police department were less than the results from the state police lab. The judge credited the measurements from the state lab because the police department's measurements of each bag of cocaine were less than the weights reported by the state lab by *exactly* the same proportion—two-thirds. The judge concluded from this that one of the scales may not have been properly calibrated; his theory was that it was highly unlikely that two scales would consistently differ in this way by accident. Based on evidence that the state lab regularly tested and logged the accuracy of its equipment, the judge concluded by a preponderance of the evidence that the state lab's measurement of 54 grams was more reliable. That 4-gram increase triggered the 10-year statutory mandatory minimum sentence (up from 5 years), which the court then imposed.

## II. Discussion

Cannon challenges the sufficiency of the evidence supporting his conviction, citing the absence of an audio-tape recording of the controlled buy (owing to the failure of the recording equipment) and a discrepancy between the testimony of Agent Ellison and Detective Teutonico. The argument is meritless. We view the evidence in the light most favorable to the government, drawing all reasonable inferences in its favor, and will uphold the jury's verdict so long as "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Jones*, 418 F.3d 726, 729 (7th Cir. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Despite the failure of the audio-recording equipment, the government's evidence was more than sufficient, including as it did the testimony of multiple witnesses who participated in the controlled buy and arrested Cannon in possession of the buy money as he attempted to flee the scene. The contradictory testimony of Agent Ellison and Detective Teutonico, who provided inconsistent accounts of whether Ellison intended to purchase *two* or *three* ounces of cocaine, was minor, unimportant, and in any event a matter for the jury to weigh in evaluating their testimony. We do not second-guess questions of witness credibility. *United States v. Bowman*, 353 F.3d 546, 552 (7th Cir. 2003). This record is easily sufficient for us to conclude that a rational jury could find Cannon guilty beyond a reasonable doubt.

Next up is Cannon's assertion that admission of DEA Agent Jackson's videotaped deposition was unconstitu-

tional and unfairly prejudicial under Rule 403 of the *Federal Rules of Evidence.* We review this argument for plain error because Cannon failed to raise it below. *See United States v. Hall*, 142 F.3d 988, 996 (7th Cir. 1998). Agent Jackson was deployed to Iraq before trial, and the district court granted the government's request under Rule 15 of the *Federal Rules of Civil Procedure* to take his testimony by videotaped deposition before he left the country. Cannon was present with his counsel during the deposition, and Jackson was subjected to full cross-examination. In an underdeveloped argument, Cannon asserts that the admission of the videotaped deposition was unfairly prejudicial and possibly unconstitutional because Jackson's testimony was not subjected to the rigors of an actual trial.

Although rare, preservation of witness testimony by deposition is authorized in criminal cases under Rule 15(a)(1) when "exceptional circumstances and . . . the interests of justice" require it. The defendant's presence is required, and the "scope and manner of the deposition examination and cross-examination must be the same as would be allowed during trial." Rule 15(c), (e)(2). The rule provides that all or part of the deposition may be used as evidence "as provided by the Federal Rules of Evidence." Rule 15(f). Cannon does not argue that the terms of the rule were not met, and we have previously upheld the use at trial of Rule 15 depositions against Confrontation Clause challenges. *See, e.g.*, *United States v. Donaldson*, 978 F.2d 381, 392-93 (7th Cir. 1992); *United States v. Kehm*, 799 F.2d 354, 360-61 (7th Cir. 1986). These cases predate *Crawford v. Washington*, 541 U.S. 36 (2004), but we see no reason, post-*Crawford*, to question the constitutionality of admitting fully cross-examined testi-

mony preserved by a properly conducted Rule 15 deposition. *Crawford* held that the Confrontation Clause bars the admission of testimonial statements of witnesses absent from trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examination. *Id.* at 68. Both requirements were satisfied here. Cannon's argument about unfair prejudice is frivolous.

Cannon also questions the chain of custody for the crack-cocaine evidence used to convict him. Again, he did not raise this point below, so our review is for plain error. *Hall*, 142 F.3d at 996. Cannon suggests that powder cocaine seized at the scene from his brother could have been commingled with the crack cocaine that he sold to Agent Ellison because Detective Teutonico did not place the crack cocaine in a sealed evidence bag. The record reflects, however, that Detective Teutonico segregated the contraband at the scene, and the government's evidence carefully traced the path of Cannon's crack cocaine as the police submitted it to the state lab on three occasions prior to trial. There was little possibility of commingling; crack and powder cocaine bear little physical resemblance to each other, and Teutonico marked the evidence at the scene. The drugs remained in official custody at all times, and there is no evidence of tampering, so we may presume that the evidence was properly handled. *United States v. Boykins*, 9 F.3d 1278, 1285 (7th Cir. 1993). Regardless, a break in the chain of custody goes to the weight of the evidence, not its admissibility. *United States v. Williams*, 44 F.3d 614, 618 (7th Cir. 1995). We find no error, let alone plain error.

Cannon's final argument is one pertaining to his mandatory minimum sentence, and this circuit's case law readily disposes of it. By special verdict the jury found Cannon guilty beyond a reasonable doubt of distributing at least 5 but less than 50 grams of cocaine base, subjecting him to a prison term of 5 to 40 years. The district court, however, found by a preponderance of the evidence that Cannon delivered 54 grams, thus triggering the mandatory minimum sentence of 10 years under 21 U.S.C. § 841(b)(1)(A). That judicial fact-finding, Cannon suggests, violated his Sixth Amendment right to a jury trial.

The Supreme Court held in *Harris v. United States* that the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), does not apply to facts triggering a statutory minimum sentence when that minimum would not exceed the maximum sentence allowable under the jury's verdict. *Harris*, 536 U.S. at 557. In other words, a judge may use the preponderance standard to find facts that increase a defendant's sentence when those facts do no more than raise a statutory minimum.

We have repeatedly rejected arguments that *Harris* is no longer good law after *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005). *See, e.g., United States v. Cannon*, 429 F.3d 1158, 1160 (7th Cir. 2005); *United States v. Jones*, 418 F.3d at 730-32. We do so again here.

AFFIRMED.