NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 22, 2009
Decided August 6, 2009

**Before**

JOHN L. COFFEY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 08-2027

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee,*<br><br>    *v.*<br><br>ANTHONY K. WILLIAMS,<br>    *Defendant-Appellant.* | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division.<br><br>No. 1:06-CR-00030-01<br><br>John Daniel Tinder,<br>*Judge.* |

**O R D E R**

A jury found Anthony Williams guilty of possession of crack cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), and possession of powder cocaine, *id.* § 844. He was sentenced to a total of 240 months' imprisonment. Williams has filed a notice of appeal, but his appointed lawyer, after a review of the relevant law and facts, has moved to withdraw because she has been unable to discern a nonfrivolous basis for the appeal. *See Anders v. California*, 386 U.S. 738 (1967). We invited Williams to respond to counsel's submission, *see* CIR. R. 51(b), but he has not. We limit our review to the potential issues identified in counsel's supporting brief. *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

In February 2006, police in Indianapolis, Indiana, were investigating Williams, a suspected crack dealer. An informant acting at the direction of Detective Ingram contacted Williams and arranged for Williams to deliver crack cocaine. Knowing that Williams would arrive for the transaction in a black Chevrolet Malibu, Ingram told Officer Wildauer that "if he can ascertain a reason to stop the vehicle, to go ahead and get it stopped." Wildauer spotted the vehicle and followed it for about a half-mile. According to Wildauer, he stopped the Malibu after he used a radar gun to gauge the speed of the car at 41 m.p.h. in a 35 m.p.h. zone. The driver, Nicole Barber, later denied that she had been speeding. She testified at a suppression hearing that she had noticed the police car following her and was driving under the speed limit because she did not have a valid driver's license. In any event, after stopping the car Wildauer approached Barber; Williams was in the front passenger seat. Wildauer noted a smell of burnt marijuana emanating from the car as well as on Barber's breath, and after learning that Barber's license was suspended, he arrested both Barber and Williams.

Barber agreed to let Officer Wildauer search her car, and he discovered an aerosol can with a false bottom that contained roughly 8 grams of marijuana, 100 grams of crack, and 2.5 grams of powder cocaine. According to Wildauer, both Barber and Williams admitted they had been smoking marijuana, and Williams, hoping to cooperate with the investigation, went further: he admitted that the drugs found in the car were his and that the $2,755 he was carrying was generated by his drug business, which each week was turning over a cocaine inventory with a wholesale value of $11,000. Williams also invited Detective Ingram to his house, where he pointed out his drug stash (including an additional 25 grams of crack and 240 grams of powder cocaine), scales, and more cash from dealing.

After Williams was indicted, he moved to suppress the physical evidence and his incriminating statements on the ground that both were the product of an unlawful vehicle stop. The court concluded that Officer Wildauer had reasonable suspicion to stop the vehicle for speeding and denied the suppression motion. Three days before his scheduled trial, Williams renewed his motion to suppress and offered as additional evidence a video (DVD) of the vehicle stop captured by the camera in Wildauer's patrol car. At the same time, Williams moved to exclude the video at trial because the government had waited until that late date to disclose the DVD, which, the court found, corroborated Wildauer's testimony that he stopped Williams for speeding. After watching the DVD, the district court again denied the suppression motion and admitted the DVD at trial, thus implicitly denying Williams's motion in limine.

Counsel first questions whether Williams might challenge the suppression ruling, but properly concludes that any argument would be frivolous. We review de novo the

district court's conclusion that the vehicle stop was supported with reasonable suspicion, and review the underlying facts for clear error. *See United States v. Groves*, 559 F.3d 637, 640 (7th Cir. 2009). Moreover, credibility determinations, such as believing Officer Wildauer instead of Barber about the car's speed, can virtually never be clear error. *See United States v. Biggs*, 491 F.3d 616, 621 (7th Cir. 2007).

The district court focused on whether Officer Wildauer had reasonable suspicion that Barber was speeding (a finding we would not disturb), but the question is irrelevant. As was made clear at trial, Detective Ingram knew before the car was stopped that Williams would be arriving in the black Malibu to deliver 63 grams of crack to the informant, and that was reason enough to stop and search the car. *See United States v. Loera*, 565 F.3d 406, 411 (7th Cir. 2009) (explaining that patrol officers who told defendant he was stopped for committing traffic offenses needed no justification for stop beyond the fact that a DEA agent who knew that car was laden with cocaine had asked for assistance); *see also United States v. Parra*, 402 F.3d 752, 764 (7th Cir. 2005) (noting that appellate court may rely upon evidence from both suppression hearing and trial when reviewing district court's ruling on motion to suppress).

Counsel also considers whether Williams might contest the district court's decision to admit the video of the vehicle stop. We review that ruling only for abuse of discretion, *United States v. Sawyer*, 558 F.3d 705, 713 (7th Cir. 2009), and even if there was an evidentiary mistake made by the trial court, we would not reverse it for a harmless error, *United States v. Woods*, 556 F.3d 616, 620 (7th Cir. 2009). The DVD depicts the traffic stop from the perspective of Office Wildauer's patrol car. Counsel suggests no reason why its admission might have violated the rules of evidence, nor has counsel explained how admitting the DVD could have unfairly prejudiced Williams. At trial Wildauer used the DVD to help narrate the events that followed the traffic stop, including his discovery of the drugs inside the Malibu. Any argument that the use of the video was inappropriate plainly would be frivolous.

Counsel also considers whether Williams might challenge the sufficiency of the trial evidence. We would overturn a conviction for insufficient evidence only if, after viewing the evidence in the light most favorable to the government, no rational jury could have found the essential elements of the charged crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Cannon*, 539 F.3d 601, 603 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 2013 (2009). We agree with counsel that any challenge based on sufficiency of the evidence would be frivolous. The trial court heard testimony from Officer Wildauer concerning his discovery of the drugs in Barber's car, and Detective Ingram's testimony concerning the informant setting up a drug deal with Williams and

Williams's own description of his drug-dealing business. Ingram also testified that Williams directed him to his apartment where he pointed out his drug supplies and paraphernalia.

Moreover, although Williams was convicted of two counts charging him with possessing a controlled substance on the same day, his convictions raise no issue of multiplicity. Multiplicity, the charging of a single crime in more than one count, exposes a defendant to the threat of receiving multiple punishments for the same offense, and violates the Double Jeopardy Clause of the Fifth Amendment. *Rutledge v. United States*, 517 U.S. 292, 297 (1996); *United States v. Starks*, 472 F.3d 466, 468-69 (7th Cir. 2006). But Williams was not convicted twice for the same possession. The government separately charged and proved both that Williams possessed the 100 grams of crack in the aerosol can, and that he possessed more than 240 grams of powder cocaine in his apartment. Separate possessions in separate places can properly be classified as separate crimes without being in violation of the Double Jeopardy Clause. *See United States v. Johnson*, 977 F.2d 1360, 1374 (10th Cir. 1992) ("Although a supply of narcotics generally is not divisible for purposes of prosecution, various stashes of that drug are considered separate where the evidence indicates they were intended for different purposes or transactions."); *United States v. Griffin*, 765 F.2d 677, 682-83 (7th Cir. 1985) (rejecting multiplicity argument where defendant was convicted on separate counts under § 841(a)(1) based on packages of cocaine found in his pocket and car); *United States v. Blakeney*, 753 F.2d 152, 154 (D.C. Cir. 1985) (concluding there was no multiplicity issue where defendant was convicted on two counts based on separate possessions of marijuana at home and at work).

Counsel, who did not represent Williams at trial, also correctly notes that any potential claim of ineffective assistance is best brought on collateral review. Although counsel has not even identified a perceived deficiency in the performance of Williams's trial lawyer, the question would be better explored in a postconviction proceeding where a complete record may be developed. *See Massaro v. United States*, 538 U.S. 500, 504-05 (2003); *United States v. Harris*, 394 F.3d 543, 557-58 (7th Cir. 2005).

Finally, counsel contemplates whether Williams might challenge his overall prison sentence. The government charged in the first count, and the jury agreed, that Williams possessed 50 or more grams of crack with intent to distribute. The government also filed an enhancement information, *see* 21 U.S.C. § 851, alleging that Williams had two felony drug convictions prior to his arrest in this case, which for the crack offense would have subjected him to a mandatory term of life in prison, *see id.* § 841(b)(1)(A)(iii). Williams successfully avoided the life sentence by persuading the district court that one of his previous drug convictions should not count because it was a juvenile conviction obtained

in a process that did not guarantee a jury trial.  But Williams did not challenge his other felony drug conviction, and one prior conviction, in combination with the drug type and quantity, was enough to mandate a minimum imprisonment term of 20 years.  *See* 21 U.S.C. § 841(b)(1)(A)(iii); *United States v. Arreola-Castillo*, 539 F.3d 700, 703 (7th Cir. 2008).  The district court had no authority to sentence for the crack offense below the 20-year term imposed, *see United States v. Forman*, 553 F.3d 585, 588 (7th Cir. 2009), so any reasonableness challenge to the total imprisonment would be frivolous.

Accordingly, counsel's motion to withdraw is **GRANTED** and the appeal is **DISMISSED**.