[Cite as *State v. Painter*, 2014-Ohio-5011.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2014-03-022 |
| | : | O P I N I O N |
| - vs - | | 11/10/2014 |
| | : | |
| AARON PAINTER, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 08 CR 00855


D. Vincent Faris, Clermont County Prosecuting Attorney, Nick Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Repper, Pagan, Cook, Ltd., Christopher J. Pagan, 1501 First Avenue, Middletown, Ohio 45044, for defendant-appellant


**PIPER, J.**

{¶ 1} Defendant-appellant, Aaron Painter, appeals his convictions and sentence in the Clermont County Court of Common Pleas on multiple counts of drug trafficking and possession.

{¶ 2} Painter was arrested after he sold narcotics to undercover agents on multiple occasions and was later found in possession of various narcotics through a search of his

home and car. Painter was indicted on 15 separate counts related to his trafficking and possession charges. Most of the counts also included a specification that Painter's criminal activity occurred within the vicinity of a juvenile.

{¶ 3} Counts 1 through 5 charged Painter with aggravated trafficking for two instances where Painter sold Oxycontin or Tylox to undercover agents on February 5, 2008.[1] Count 1 alleged that Painter sold eight Oxycontin tablets, which were 80mg each. Count 2 alleged that Painter sold six Oxycontin tablets, which were 40mg each. Painter sold the eight 80mg tablets and the six 40mg tablets to the same narcotics agent in a single transaction for $400. Count 3 alleged that Painter sold seven Oxycontin tablets, which were 20mg each for $100. Count 4 alleged that Painter sold one Tylox tablet for $15 and gave one Tylox tablet to the agent as a sample. Counts 3 and 4 occurred on the same day as Counts 1 and 2, but were later in the day and were conducted in a different location than where Painter sold the Oxycontin tablets earlier in the day for $400. Count 5 alleged that Painter agreed to sell 100 Oxycontin tablets, each 40mg, for $3,000.

{¶ 4} Counts 6 through 8 charged Painter with aggravated trafficking for sales of Oxycontin and Percocet to undercover agents on February 7, 2008. Count 6 alleged that Painter sold three Oxycontin tables, which were 80mg each. Count 7 alleged that Painter sold six Oxycontin pills, which were 40mg each. The tablets Painter sold to a "narcotic agent" as charged in Counts 6 and 7 were sold in a single transaction for $400. Count 8 alleged that Painter sold five Percocet, each weighing 30mg, for $100 to an "undercover agent" on the same day that he sold the Oxycontin in Counts 6 and 7.

{¶ 5} Counts 9 through 12 charged Painter with aggravated possession of Oxycontin

---

1. The record interchangeably uses Oxycontin and Oxycodone to refer to the tablets Painter sold. We will, for consistency sake, use Oxycontin to refer to the controlled substance that Painter sold. Also, Tylox is essentially the same as Oxycontin, but we will refer to Painter selling Tylox when the record specifies as such.

and codeine, with such possession occurring on February 16, 2008. Count 9 alleged that Painter's home contained 17 Oxycontin tablets, each weighing 20mg. Counts 10-12 were each specific to police also finding seven 40mg tablets (Count 10), one 80mg tablet (Count 11), and eight codeine tablets (Count 12).

{¶ 6} Counts 13-15 charged Painter with aggravated possession of Oxycontin on February 19, 2008, where police pulled Painter over and discovered various Oxycontin tablets in his car. Count 13 alleged that Painter had twelve 20mg tablets, Count 14 alleged that Painter had five 40mg tablets, and Count 15 alleged that Painter had three 80mg tablets in his possession.

{¶ 7} After negotiations, the state agreed to dismiss Counts 5, 10, 11, 12, 14, and 15, and also dismissed the juvenile specification in return for Painter pleading guilty to Counts 1 through 4, 6 through 9, and count 13. The trial court accepted Painter's guilty plea, and ordered a presentence investigation. After the investigation was complete, the trial court sentenced Painter to an aggregate 109-month sentence, but reserved the sentence and placed Painter on community control. Painter did not appeal his convictions or the trial court's sentence.

{¶ 8} Painter later violated the terms of his community control, and the trial court held a hearing at which Painter's community control was revoked. The trial court reinstated the 109-month sentence as a result of Painter's violations, but failed to advise Painter of his appellate rights. Painter later filed a motion for a delayed appeal from the trial court's revocation of his community control, and argued that he was never given his appellate rights. This court granted Painter's motion for a delayed appeal specific to the trial court's entry revoking community control. However, on appeal, Painter argued that his convictions and sentence were void because the trial court should have merged some of the counts as allied offenses. This court determined that Painter could not collaterally attack his convictions and

sentence because his delayed appeal was limited only to a challenge of the trial court's revocation of community control. *State v. Painter*, 12th Dist. Clermont No. CA2012-04-031, 2013-Ohio-529. We affirmed the trial court's revocation of community control and its imposition of the reserved sentence.

{¶ 9} Painter subsequently filed another motion for delayed appeal, asking this court to consider an appeal challenging his original convictions and sentence. We granted Painter's motion for a second delayed appeal, and will now consider Painter's challenge to his convictions and sentence as raised by the following assignments of error. Because the assignments of error are interrelated, we will address them together.

{¶ 10} Assignment of Error No. 1:

{¶ 11} PAINTER'S INDICTMENT FAILED TO STATE AN OFFENSE.

{¶ 12} Assignment of Error No. 2:

{¶ 13} THE TRAFFICKING COUNTS WERE ALLIED OFFENSES UNDER R.C. 2921.45 AND DOUBLE JEOPARDY.

{¶ 14} Painter argues in his first assignment of error that his indictment did not list valid offenses because such indictment charged each crime differently based upon the strength of each tablet sold, and in his second, that his convictions should have merged because they are allied offenses.

{¶ 15} At the onset, we recognize that the state has conceded that Counts 1 and 2 should be merged together, Counts 3 and 4 should be merged together, and that Counts 6 and 7 should merge together. The state asserts that Counts 1/2, 3/4, 6/7, as well as Count 8, should not merge any further, as each transaction or possession occurred with a separate animus. The state also asserts that the charges were valid as indicted, and that such valid charges do not lose their validity simply because they turn out to be allied offenses of similar import.

- 4 -

{¶ 16} Ohio's allied offenses statute, R.C. 2941.25, very clearly provides that "where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, *the indictment or information may contain counts for all such offenses*, but the defendant may be convicted of only one." R.C. 2941.25(A). (Emphasis added.) The fact that the indictment ineffectually parceled out the various offenses based upon the strength of the tablets did not render the individual charges legally-invalid or "non-existent," as asserted by Painter.

{¶ 17} Even if we were to view the indictment as being multiplicitous, as suggested in Painter's reply brief, the remedy for a multiplicitous indictment is to analyze the charges according to the allied offenses statute, R.C. 2941.25. *State v. Childs*, 88 Ohio St.3d 558, 561 (2000). *See also State v. Lewis*, 11th Dist. Lake No. 2012-L-074, 2013-Ohio-3974, ¶ 138 (noting that "even if counts are multiplicitous * * * merging them for purposes of sentencing, pursuant to R.C. 2941.25, will cure any threat of double jeopardy"). Here, the trial court was obligated to merge certain counts contained in the plea, as the state construed Painters' same conduct as constituting two or more allied offenses on more than one occasion.

{¶ 18} The Ohio Supreme Court has set forth a test to determine whether offenses are allied offenses of similar import pursuant to R.C. 2941.25. *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314. Pursuant to the *Johnson* test, courts must first determine "whether it is possible to commit one offense *and* commit the other with the same conduct." *Id.* at ¶ 48. (Emphasis sic.) It is not necessary that the commission of one offense will always result in the commission of the other, only that it is possible for both offenses to be committed by the same conduct. *Id.*

{¶ 19} If it is possible to commit both offenses with the same conduct, courts must next determine whether the offenses were in fact committed by the same conduct, or a single

act performed with a single state of mind. *Id.* at ¶ 49. If the answer to both prongs of the test is yes, then the offenses are allied offenses of similar import and must be merged. *Id.* at ¶ 50. Conversely, if the offenses are committed separately or with a separate animus, the offenses will not merge. *Id.* at ¶ 51.

{¶ 20} An appellate court applies a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 28. "The defendant bears the burden of establishing his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act." *State v. Lewis*, 12th Dist. Clinton No. CA2008-10-045, 2012-Ohio-885, ¶ 14.

{¶ 21} After reviewing the record, we agree with the state's contention that Counts 1 and 2 should be merged together, Counts 3 and 4 should be merged together, and that Counts 6 and 7 should merge together. Despite Painter's argument that Counts 1, 2, 3, and 4 should all merge, the facts indicate that Painter acted with a separate animus when he committed the crimes that constituted Counts 1 and 2 as opposed to Counts 3 and 4.

{¶ 22} The record indicates that Painter committed Counts 1 and 2 by selling Oxycontin tablets to an agent on February 5, 2008. Because Painter sold these tablets in a single transaction, regardless of their milligram strength, with the same animus and conduct, the charges are allied offenses. Painter committed Counts 3 and 4 by selling Oxycontin and Tylox, which is essentially the same as Oxycontin, to a different agent later in the day on February 5, 2008. Again, because Painter sold these tablets in a single transaction, regardless of their milligram strength, with the same animus and conduct, the charges are allied offenses. However, once Counts 1 and 2 are merged and Counts 3 and 4 are merged, the surviving counts will not merge into each other, as Painter had a separate animus and committed the crimes by separate conduct by selling to two different agents and at different times during the day.

{¶ 23} Regarding Counts 6 and 7, we find that those two charges are allied offenses as well. Painter committed Counts 6 and 7 on February 7, 2008 by selling Oxycontin to a narcotics agent. While Painter argues that Count 8 should also be merged with Counts 6 and 7, he has failed to demonstrate that he acted with the same conduct or the same animus when he sold Percocet to a different officer. The record indicates that Count 8 is specific to Painter selling Percocet to a different "undercover" agent after he had subsequently sold the Oxycontin in Counts 6 and 7 to the narcotics agent.

{¶ 24} During the plea hearing, the state presented the facts supporting the charges, and stated that Counts 6 and 7 were specific to Painter selling different strengths of Oxycontin tablets to a "narcotics agent working with the Clermont County Narcotics Unit." The state went on to provide the facts supporting Count 8, and stated that Painter sold "five 30 milligram Percocet tablets for $100 to an undercover agent working for the Clermont County Narcotics Department." These facts indicate that Painter sold one agent Oxycontin and then sold the Percocet tablets to a different agent.

{¶ 25} The trial court permitted Painter the opportunity to clarify the facts or to object to them, and Painter clarified other portions of the state's reading of the facts. However, Painter did not challenge the state's facts in regard to there being two separate officers involved in Counts 6/7 and 8. Additionally, Painter has not pointed to any indication in the record that Counts 6 through 8 occurred at the same moment, involved the same agent, or were one single transaction. Therefore, we find that Painter committed Counts 6/7 with a separate animus and different conduct than he did with Count 8.

{¶ 26} While Painter does not challenge the other offenses as being allied, we nonetheless note for purposes of resentencing that the remaining charges are not allied offenses. Count 9 was specific to Painter's possession of Oxycontin at his house, and was committed on February 16, 2008. Count 13 was also a possession charge, but that charge

was specific to Painter possessing Oxycontin in his car, and was committed on February 19, 2008. Therefore, the possession charges were committed with separate conduct and a different animus and consequently do not merge.

{¶ 27} The state's decision to charge Painter for selling a multitude of controlled substances did not result in the "non-existence" of charges prohibited by the Ohio Revised Code. As such, we overrule Painter's first assignment of error. However, we sustain Painter's second assignment of error, having found that several of Painter's charges were allied offenses of similar import. Upon remand, the state will choose which charges to proceed upon, and the trial court will resentence Painter accordingly and consistent with this opinion.[2]

{¶ 28} Judgment reversed, and the cause is remanded for further proceedings.

HENDRICKSON, P.J., and M. POWELL, J., concur.

---

2. "The General Assembly has made clear that it is the state that chooses which of the allied offenses to pursue at sentencing, and it may choose any of the allied offenses." *State v. Whitfield*, 124 Ohio St.3d 319, 324, 2010-Ohio-2, ¶ 20.

- 8 -