[Cite as *State v. Gomez*, 2017-Ohio-8832.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                  :

        Plaintiff-Appellee,            :            No. 16AP-560
                                      (C.P.C. No. 15CR-3965)
v.                                              :

Julio H. Gomez,                                 :            (REGULAR CALENDAR)

        Defendant-Appellant.           :

---

D E C I S I O N

Rendered on December 5, 2017

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee. **Argued:** *Barbara A. Farnbacher*.

**On brief:** *Yeura R. Venters*, Public Defender, and *John W. Keeling*, for appellant. **Argued:** *John W. Keeling*.

---

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by defendant-appellant, Julio H. Gomez, from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas following his entry of a guilty plea to nine counts of trafficking in heroin and one count of engaging in a pattern of corrupt activity.

{¶ 2} On August 14, 2015, appellant was indicted on one count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32 (a felony of the first degree), seven counts of trafficking in heroin, in violation of R.C. 2925.03 (all felonies of the first degree), one count of trafficking in heroin, in violation of R.C. 2925.03 (a felony of the second degree), and one count of trafficking in heroin, in violation of R.C. 2925.03 (a felony of the third degree). The indictment also named four co-defendants.

{¶ 3}   On May 16, 2016, appellant appeared before the trial court and entered a plea of guilty to all ten counts of the indictment.  During the plea proceedings, the prosecutor gave the following recitation of the facts, beginning with Count 2 of the indictment.  According to the prosecutor, the events giving rise to Count 2 occurred on June 30, 2015, after detectives with the Columbus Police Department identified "the group that was indicted in this case involving [appellant] and his co-defendants."  On that date, co-defendant Manuel Montero, characterized by the prosecutor as a "runner" dispatched by appellant, "sold over 50 grams of heroin to * * * Richard Adams."  Adams was detained by detectives "and found in possession of the heroin."  (May 16, 2016 Tr. at 9.)

{¶ 4}   The group remained under surveillance, and the events giving rise to Count 3 occurred "[t]wenty-one days later," when detectives "observed a similar narcotics trafficking incident with Joseph Martini," whereby "Martini would call [appellant] and Montero did the sale [for] over 250 grams of heroin."  (May 16, 2016 Tr. at 9, 10.)  With respect to Count 4, the prosecutor related that "Martini became an informant after his first arrest and made a controlled purchase from the same two individuals for over 50 grams of heroin on July 28, 2015."  Count 5 involved "an additional sale to the informant of greater than 50 grams of heroin."  (May 16, 2016 Tr. at 10.)

{¶ 5}   The conduct giving rise to Counts 6, 7, 8, 9, and 10 of the indictment occurred on August 5, 2015, as "[s]earch warrants were executed at about six or seven locations identified as either the places in which the defendants were sleeping, where they were obtaining the drugs, cutting up the drugs or storing the drugs and money."  Specifically, Count 6 involved "one of the locations [that] had numerous kilos of heroin that was used as a storage location by this group."  With respect to Count 7, heroin was discovered in "the co-defendant's car with him" (i.e., specifically, co-defendant Omar Sanchez).  (May 16, 2016 Tr. at 10.)

{¶ 6}   The prosecutor represented that Count 8 was for "another of the locations and that was greater than 50 grams of heroin."  (May 16, 2016 Tr. at 10.)  Count 9 involved the discovery of heroin at "another storage location, greater than 250 grams."  Finally, Count 10 involved the recovery of "greater than ten grams" of heroin at the home of co-defendant Sanchez.  (May 16, 2016 Tr. at 11.)

{¶ 7}   Regarding the facts giving rise to Count 1, the prosecutor related that appellant "would take calls from customers and dispatch Montero to facilitate the trafficking in heroin for this group on more than two occasions for the RICO offense." The prosecutor further related that the heroin "was being sold for about 900 to $1,100 an ounce," and that "each of these transactions was for about $9,000 or so." (May 16, 2016 Tr. at 11.)

{¶ 8}   Following the recitation of facts, the trial court engaged in a colloquy with appellant regarding his plea. The trial court accepted appellant's guilty plea, ordered a presentence investigation report and scheduled a sentencing hearing date.

{¶ 9}   The trial court conducted a sentencing hearing on June 23, 2016. During the hearing, the trial court noted that, at the time of the May 16, 2016 plea hearing, "the Court incorrectly advised the defendant regarding the maximum possible sentence in this case." (June 23, 2016 Tr. at 2.) Specifically, the court noted:

> The flaw was related to Count Seven where it was originally pled as an F-1, requiring - - or having the maximum of 11 years of mandatory prison time. However, Count Seven is actually an F-3 and on the previous guilty plea it was listed as both. And on the previous guilty plea * * * the Court previously advised Mr. Gomez that his maximum prison sentence that was possible was 110 years when in actuality, the maximum prison sentence that's possible for Mr. Gomez is less than 110 years and is actually 99 years.

(June 23, 2016 Tr. at 2-3.)

{¶ 10} The trial court inquired of appellant whether he understood, and appellant responded affirmatively. Defense counsel represented to the court that he had explained this development to appellant "outside of the courtroom." Defense counsel further stated on the record: "We would waive any defect in the plea, proceed on the plea as originally entered, but with this amendment obviously to his benefit." (June 23, 2016 Tr. at 4.)

{¶ 11} The prosecutor, "out of [an] abundance of caution," noted that the trial court, at the time of the plea, "indicated there were no promises as to sentencing," and that defense counsel "had indicated an approximate range" of sentence "pursuant to off-the-record discussions." (June 23, 2016 Tr. at 5-6.) The prosecutor further noted that, based on subsequent events, "the Court has become aware more fully of the facts of this case, as well as the existence of a previously unknown significant record." The prosecutor

then represented to the court: "In case the defendant is not sentenced in the range that was indicated by [defense counsel], we want you to make sure that the defendant has the opportunity, if he wishes, to withdraw his guilty plea." (June 23, 2016 Tr. at 6.)

{¶ 12} In response, defense counsel stated: "I have told my client today that because of the facts that came out during the presentence report and specifically this arrest and deportation that the Court wasn't aware of, that may not be the range." Defense counsel also represented that he told his client "he would be able to withdraw his plea, but that * * * plea negotiations would probably stop and this will be set for trial and go that route." (June 23, 2016 Tr. at 7.) Defense counsel stated that his client wanted to proceed "with the sentencing today with this amendment." (June 23, 2016 Tr. at 8.) The trial court then inquired of appellant whether he wished to proceed with sentencing, and appellant responded affirmatively.

{¶ 13} By decision and entry filed August 23, 2016, the trial court sentenced appellant to an aggregate term of 22 years imprisonment. The court's entry also indicated that appellant was subject to a mandatory five-year term of post-release control.

{¶ 14} On appeal, appellant sets forth the following two assignments of error for this court's review:

> [I.] THE STATE ERRED WHEN IT CREATED FIVE SEPARATE CHARGES OUT OF THE SIMULTANEOUS POSSESSION OF THE SAME DRUG FOUND AT SEPARATE LOCATIONS INSTEAD OF AGGREGATING THE AMOUNTS INTO A SINGLE OFFENSE. THE TRIAL COURT CONSEQUENTLY ERRED WHEN IT FAILED TO PROPERLY ADVISE THE DEFENDANT ON THE MAXIMUM PENATLY OF THE CHARGES, THE NATURE OF THE CHARGES, AND THE EFFECTS OF THE PLEA, AS A RESULT OF THE FAILURE TO MERGE THE FIVE CHARGES INTO A SINGLE OFFENSE.
>
> [II.] THE TRIAL COURT ERRED WHEN IT FAILED TO COMPLY WITH CRIM.R. 11 BY INFORMING THE DEFENDANT THAT HE COULD NOT BE COMPELLED TO TESTIFY AGAINST HIMSELF AT TRIAL.

{¶ 15} Under the first assignment of error, appellant challenges Counts 6 through 10 of the indictment as multiplicitous, arguing that the counts involved the same type of drug (i.e., heroin), found on the same date at five different locations. Appellant argues that, based on plaintiff-appellee, the State of Ohio's, recitation of the facts, police officers

executed search warrants on August 5, 2015 at seven apartments and one storage locker, and heroin was found at five of the locations, constituting grounds for Counts 6 through 10 of the indictment. Appellant maintains that the above facts give rise to the legal issue of whether the state can file separate charges for simultaneous possession of the same type of drug found at different locations, or whether the state was required to aggregate the drugs into a single offense.

{¶ 16} At the outset, we note the state raises the issue of whether appellant has waived his claim that the indictment was multiplicitous by failing to raise an objection to the indictment and by entering a guilty plea to the offenses at issue. In support, the state relies on *State v. Conn,* 12th Dist. No. CA2014-04-059, 2015-Ohio-1766, ¶ 47, in which the court held the defendant waived any claim that his 50-count indictment was defective and multiplicitous by failing to raise alleged defects in the indictment prior to entering his guilty plea. The state also cites this court's decision in *State v. Fortner,* 10th Dist. No. 08AP-191, 2008-Ohio-5067, ¶ 10 (holding that "[b]ecause appellant pled guilty to six counts of aggravated robbery as charged in his indictment, he has waived his right to challenge alleged defects in the indictment"). The state, however, acknowledges that appellant has also raised a merger argument (which, when not raised in the trial court, operates as a forfeiture, not waiver, of all but plain error). *See State v. Rogers,* 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 19-21.

{¶ 17} Accepting, for purposes of argument, that appellant has not waived the issue of multiplicity, we disagree with his contention that the state was precluded from charging him with multiple counts of trafficking based on conduct occurring on the same date. In general, "[a]n indictment is multiplicitous where it charges a single offense in multiple counts." *State v. Hendrix,* 11th Dist. No. 2011-L-043, 2012-Ohio-2832, ¶ 51. In this respect, the " 'vice of a multiplicitous indictment lies in the possibility of multiple punishments for a single offense in violation of the cumulative punishment branch of the Double Jeopardy Clause of the Fifth Amendment.' " *Id.,* quoting *State v. Childs,* 88 Ohio St.3d 558, 561 (2000).

{¶ 18} Even if counts are multiplicitous, "merging them for purposes of sentencing, pursuant to R.C. 2941.25, will cure any threat of double jeopardy." *Id.* Thus, under Ohio law, "the state may charge a defendant with multiple counts for multiple offenses, based upon the criminal conduct of the defendant." *Conn* at ¶ 48. Specifically, R.C. 2941.25,

which "codifies the protections of the Double Jeopardy Clause of the United States and Ohio Constitutions, clearly provides that 'where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, *the indictment or information may contain counts for all such offenses,* but the defendant may be convicted of only one." (Emphasis sic.) *Id.,* quoting R.C. 2941.25.

{¶ 19} R.C. 2925.03 sets forth the offense of trafficking in drugs, and states in part:

> (A) No person shall knowingly do any of the following:
>
> * * *
>
> (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

{¶ 20} As noted, appellant contends Counts 6 through 10 of the indictment are multiplicitous as involving the simultaneous possession of the same contraband. In support, appellant relies on federal cases holding that possession of drug stashes recovered on the same day constitute a single offense under the federal statute for possession with intent to distribute (21 U.S.C. 841(a)(1)). *See, e.g., United States v. Stephens,* 118 F.3d 479 (6th Cir.1997); *Thompson v. United States,* N.D.N.Y. No. 3:04-CV-1321 (May 2, 2005); *United States v. Clay,* 355 F.3d 1281 (11th Cir.2004); *United States v. Woods,* 568 F.2d 509 (6th Cir.1978).[1]

{¶ 21} As observed by the state, however, under Ohio law, the primary legislative statement on multiplicity is set forth in R.C. 2941.25, which addresses allied offenses of similar import. *See, e.g., State v. Damron,* 10th Dist. No. 12AP-209, 2012-Ohio-5977, ¶ 8

---

[1] We note, however, a number of federal courts have held that convictions for multiple counts of possession on the same date involving distinct stashes of drugs do not raise multiplicity or double jeopardy issues. *See, e.g., State v. Maldonado,* 849 F.2d 522, 524 (11th Cir.1988) (two-count indictment for possession with intent to distribute on same date not multiplicitous where two separate stashes, each with a different quantity of cocaine, were found in separate locations); *Davis v. Berghuis,* E.D.Mich. No. 2:07-CV-10129 (Apr. 30, 2008) (convictions for possession with intent to deliver 225-650 grams of cocaine and possession with intent to deliver less than 50 grams of cocaine, where one stash found on defendant and another found in bedroom on same date, did not violate double jeopardy); *United States v. Williams,* 339 Fed.Appx. 654, 658 (7th Cir.2009) (although defendant was convicted of "two counts charging him with possessing a controlled substance on the same day, his convictions raise no issue of multiplicity" where prosecution proved defendant possessed 100 grams of crack cocaine found in aerosol can found in car and he also possessed 240 grams of cocaine in apartment).

("In Ohio, R.C. 2941.25 codifies federal and state constitutional protections."); *State v. Painter,* 12th Dist. No. CA2014-03-022, 2014-Ohio-5011, ¶ 17 ("the remedy for a multiplicitous indictment is to analyze the charges according to the allied offenses statute, R.C. 2941.25").

{¶ 22} Further, as earlier noted, "[a]n accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error." *Rogers* at ¶ 3. Forfeited error "is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of injustice." *Id.* In considering whether plain error has occurred, "an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus." *Id.* In the absence of such a showing, "the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error." *Id.*

{¶ 23} In the instant case, the state argues that appellant cannot demonstrate plain error where the facts indicate Counts 6 through 10 involve varying amounts of heroin discovered at multiple different locations. We agree.

{¶ 24} Under Ohio law, the fact that drugs may have been recovered on the same date is not dispositive of the allied offense issue. *See State v. Lewis,* 12th Dist. No. CA2008-10-045, 2012-Ohio-885, ¶ 21 (two trafficking offenses occurring on same date not allied offenses of similar import where defendant sold less than 5 grams of cocaine to an undercover officer and then, after leaving scene, was stopped by law enforcement officers who found cocaine that defendant had discarded at the time he was stopped). *See also State v. Williams,* 5th Dist. No. 11-CA-115, 2012-Ohio-3211, ¶ 20 (rejecting argument that sale of drugs (psilocybin/psilocin mushrooms) and possession of same type of drugs on same date constitute same conduct or animus; act of "selling or offering was separated in time and space from the possession of different mushrooms in a different bag in a different location"); *State v. Ward,* 3d Dist. No. 13-10-11, 2011-Ohio-254, ¶ 29 (convictions for trafficking in marijuana not allied offenses; although the three sales of marijuana all took place on same date, they were separate sales and thus "stemmed from three separate transactions").

{¶ 25} Here, the limited record on appeal indicates that law enforcement officials recovered differing quantities of heroin in different locations on the date at issue.

Specifically, according to the state's sentencing hearing memorandum and the recitation of facts provided during the plea hearing, the following amounts of heroin were recovered at the following locations: (1) 8,083 grams of heroin located on Chestnut Ridge Loop, (2) 1,041 grams of heroin at an apartment located on Freedom Crossing, (3) 9.6 grams of heroin at an apartment located on Glenmore Way, (4) 950.6 grams of heroin located on Taliesin Place, and (5) 154.3 grams of heroin located on Pendergrast Place.  On review, we agree with the state that, where the facts presented indicate the recovery of stashes found at separate locations, involving different quantities of drugs, appellant has not shown a reasonable probability that the convictions at issue are allied offenses of similar import committed with the same conduct and without a separate animus.  *Rogers* at ¶ 3.  Thus, appellant cannot demonstrate the trial court's failure to inquire whether the convictions merged for purposes of sentencing constituted plain error.  *Id.*

{¶ 26}  Appellant also contends the failure to properly merge the offenses into a single offense also adversely affected the voluntary and knowing nature of the plea proceedings on grounds he was erroneously advised the maximum penalty he was facing was 99 years (instead of, according to appellant, 66 years had the offenses merged). Having found, however, that appellant has failed to demonstrate plain error as to the merger issue, we find no merit with his claim that the trial court's failure to merge the offenses affected the plea proceedings.

{¶ 27} Based on the foregoing, appellant's first assignment of error is without merit and is overruled.

{¶ 28}  Under the second assignment of error, appellant argues the trial court erred in failing to strictly comply with Crim.R. 11 by not properly advising him of his right against self-incrimination.  Specifically, appellant contends the trial court failed to inform him that he could not be compelled to testify against himself.

{¶ 29}  Crim.R. 11(C)(2) states as follows:

> In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that

the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 30} Certain rights enunciated under Crim.R. 11(C)(2) are constitutional rights of which a defendant must be personally informed, i.e., "(1) the right to a jury trial, (2) the privilege against self-incrimination, (3) the right to compulsory process, and (4) the right to confront one's accuser's." *State v. McKee,* 11th Dist. No. 97-T-0036 (June 19, 1998). A trial court "must strictly comply with those provisions of Crim.R. 11(C) that relate to the waiver of constitutional rights." *State v. Hussing,* 8th Dist. No. 97972, 2012-Ohio-4938, ¶ 19.

{¶ 31} Strict compliance, however, does not require a "rote recitation of Crim.R. 11(C)," and a trial court's "failure to use the exact language of the rule is not fatal to the plea. Rather, the focus, upon review, is whether the record shows that the trial court explained or referred to the right in a manner reasonably intelligible to that defendant." *State v. Ballard,* 66 Ohio St.2d 473, 480 (1981). Thus, while the preferred method of advising a criminal defendant of his or her constitutional rights during the plea colloquy is to utilize the language contained in Crim.R. 11(C), "a trial court's failure to literally comply with Crim.R. 11(C) does not invalidate a plea agreement if the record demonstrates that the trial court explained the constitutional right ' "*in a manner reasonably intelligible to that defendant.*" ' " (Emphasis added in *Veney.*) *State v. Barker,* 129 Ohio St.3d 472, 2011-Ohio-4130, ¶ 14, quoting *State v. Veney,* 120 Ohio St.3d 176, 2008-Ohio-5200, ¶ 27, quoting *Ballard* at 473.

{¶ 32} A review of the plea hearing in the instant case indicates that, as part of those proceedings, the trial court engaged in the following colloquy with appellant:

> THE COURT: Do you understand you have the right to a trial by a jury of 12 people.
>
> THE INTERPRETER: Yes.
>
> THE COURT: Do you understand you could waive your right to a jury and have me decide this matter instead?
>
> THE INTERPRETER: Yes.
>
> THE COURT: Do you understand that the decision to go to trial or plead guilty today rests entirely with you?
>
> THE INTERPRETER: Yes.
>
> THE COURT: Do you understand if you went to trial, the prosecution would have to prove your guilt beyond a reasonable doubt?
>
> THE INTERPRETER: Yes.
>
> THE COURT: Do you understand that you would have the right to face and question witnesses, and to call or compel witnesses to come in and testify on your behalf?
>
> THE INTERPRETER: Okay. Okay. Yeah.
>
> THE COURT: Do you understand that you could testify on your own behalf or not have your silence used against you if you chose not to testify?
>
> THE INTERPRETER: Yes.
>
> THE COURT: Do you understand you would have the automatic right to appeal a verdict rendered by a jury or by me?
>
> THE INTERPRETER: Yes.
>
> THE COURT: And that by pleading guilty today you're giving up that right?
>
> THE INTEPRETER: Yes.

> THE COURT: Okay.  Do you have any questions about any of
> the rights we just discussed?
>
> THE INTERPRETER: No.

(May 16, 2016 Tr. at 20-22.)

{¶ 33} In asserting the trial court did not adequately inform him of his privilege against self-incrimination, appellant challenges the following language (cited above) by the court: "Do you understand that you could testify on your own behalf or not have your silence used against you if you chose not to testify?"  (May 16, 2016 Tr. at 21.)

{¶ 34} Ohio courts, however, have addressed and rejected challenges involving similar colloquy language.  Under the facts in *State v. Bassett,* 8th Dist. No. 90887, 2008-Ohio-5597, ¶ 17, the trial court advised the defendant in part: "[Y]ou can choose not to testify and the prosecutor could not comment upon that fact in violation of your 5th Amendment right."  The defendant in *Bassett* argued that the plea was invalid because the trial court did not inform her that "she could not be compelled to testify against herself if she chose to go to trial."  *Id.* at ¶ 8.  The court in *Bassett* disagreed, holding that "the court's wording that appellant could choose not to testify is the equivalent of saying that the state could not compel her to testify and amounts to strict compliance under Crim.R. 11(C)(2)."  *Id.* at ¶ 20.

{¶ 35} In *State v. Scanlon,* 5th Dist. No. 95-134 (June 29, 1998), the appellant argued the trial court's advice on the constitutional right not to testify was flawed because the court failed to inform him the state could not compel him to testify against himself.  Under the facts of that case, the trial court advised the appellant that, if he pled no contest, he was "waiving his right to testify at trial if he wanted to, or refuse to testify if he did not wish to."  On appeal, the court in *Scanlon* rejected the appellant's argument, holding that the trial court had complied with Crim.R. 11.  *See also State v. Finney*, 8th Dist. No. 99646, 2014-Ohio-1054, ¶ 13 (trial court strictly complied with Crim.R. 11 in informing defendant that "he had the right to choose not to testify and that no one could use his silence in any way"); *State v. Adams,* 8th Dist. No. 70045 (May 22, 1997) (trial court complied with Crim.R. 11(C) by advising defendant he had "the right to testify or to choose not to testify").

{¶ 36} This court has also addressed and rejected similar challenges.  In *State v. Truitt,* 10th Dist. No. 10AP-795, 2011-Ohio-2271, ¶ 12, the appellant argued the trial court

had failed to advise him of the privilege against compulsory self-incrimination when it informed him that, by entering a guilty plea, he was waiving the "right to remain silent." The appellant in *Truitt* argued on appeal "that the trial court merely explained to [appellant] that he was giving up the *right to remain silent* and did not adequately explain to [appellant] that he could not be compelled by the state to testify on his own behalf." (Emphasis sic.) *Id.* at ¶ 15. In rejecting appellant's argument, this court held that "[t]he plain meaning of the trial court's words suggest that appellant had the right to say absolutely nothing at trial, if he so desired." *Id.* at ¶ 21. This court also noted that "the trial court inquired whether appellant had any questions regarding the colloquy, and appellant answered 'no, sir.' " *Id.* Based on the record presented, this court concluded the trial court "explained waiver of the privilege against self-incrimination in a reasonably intelligent manner and in strict compliance with Crim.R. 11(C)(2)(c)." *Id.*

{¶ 37} In *State v. Allen,* 10th Dist. No. 11AP-640, 2012-Ohio-2986, the appellant argued the trial court failed to strictly comply with Crim.R. 11(C)(2)(c) in explaining the constitutional privilege against compulsory self-incrimination. Under the facts of *Allen,* the trial court, analogous to the facts in *Truitt,* had advised the appellant that his rights included "the right to remain silent." *Id.* at ¶ 17. In *Allen,* this court relied on *Truitt* in holding the trial court's advisement of appellant's right to remain silent "intuitively means that, if appellant chose to remain silent, appellant would opt to engage his privilege against self-incrimination and not testify against himself." *Allen* at ¶ 18. Thus, this court concluded that "the trial court explained appellant's privilege against compulsory self-incrimination in a reasonably intelligible manner." *Id.*

{¶ 38} We note that federal courts have observed that "[t]he words 'compelled' and 'self-incrimination' need not be ritualistically invoked." *United States v. Loutos,* 284 F.Supp.2d 942, 955 (N.D.Ill.2003). In *Loutos,* the defendant argued that he was "not advised of 'the right against compelled self-incrimination.' " *Id.* Under the facts of that case, the defendant "responded affirmatively to the questions: 'Do you understand that you would have a right to testify if you wished to do so? However, if you wish to remain silent, your silence could not be used against you?' " *Id.* at 954. The court in *Loutos* rejected the defendant's Fed.Crim.R. 11 challenge, holding that "[b]eing able to remain silent and not have it used against the defendant is the right against compelled self-incrimination." *Id.* at 955.

{¶ 39} In the present case, in addition to the plea colloquy cited above, appellant also signed a guilty plea form delineating the rights he was waiving. While the written plea form is not a substitute for the trial court's requirement under Crim.R. 11(C), the Supreme Court of Ohio has held that "when a trial court addresses all the constitutional rights in the oral colloquy, a reviewing court should be permitted to consider additional record evidence to reconcile any alleged ambiguity in it." *Barker* at ¶ 24. Thus, "an alleged ambiguity during a Crim.R. 11 oral plea colloquy may be clarified by reference to other portions of the record, including the written plea, in determining whether the defendant was fully informed of the right in question." *Id.* at ¶ 25.

{¶ 40} In the present case, appellant signed the guilty plea form which, as noted by the state, included an explanation that, by pleading guilty, he was waiving a number of constitutional rights, including "the right to have a trial by jury, * * * at which I cannot be compelled to testify against myself." Appellant acknowledged before the trial court that, prior to signing the guilty plea form, he had reviewed it with his counsel, and his counsel explained the contents of the document and answered any questions he had.

{¶ 41} As to the Crim.R. 11 plea colloquy, the record indicates the trial court engaged in a meaningful dialogue with appellant, and we conclude the court explained his constitutional rights, including the privilege against self-incrimination, in a reasonably intelligible manner. Accordingly, we find the trial court complied with the requirements of Crim.R. 11(C)(2)(c) in accepting the plea.

{¶ 42} Appellant's second assignment of error is not well-taken and is overruled.

{¶ 43} Based on the foregoing, appellant's two assignments are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

SADLER and HORTON, JJ., concur.

————————————————