[Cite as *State v. Delgadillo-Banuelos*, 2019-Ohio-4174.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 18AP-729 |
| v. | : | (C.P.C. No. 18CR-58) |
| Ovier Delgadillo-Banuelos, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 10, 2019

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee. **Argued:** *Barbara A. Farnbacher*.

**On brief:** *Timothy Young*, Ohio Public Defender, and *Allen Vender*, for appellant. **Argued:** *Allen Vender*.

APPEAL from the Franklin County Court of Common Pleas

KLATT, P.J.

{¶ 1} Defendant-appellant, Ovier Delgadillo-Banuelos, appeals from the judgment of the Franklin County Court of Common Pleas sentencing him to 16 years of imprisonment and ordering him to pay a fine of $35,000 following his entry of guilty pleas to 2 counts of trafficking in heroin. For the reasons outlined below, we affirm.

{¶ 2} On January 5, 2018, appellant, an undocumented immigrant from Mexico, was indicted on 2 counts of trafficking in heroin arising from events occurring on December 27, 2017. Pursuant to R.C. 2925.03(A)(2) and (C)(6)(g), Count 1 of the indictment alleged a first-degree felony in that the amount of heroin involved equaled or

exceeded 100 grams. Pursuant to R.C. 2925.03(A)(2) and (C)(6)(e), Count 2 alleged a second-degree felony in that the amount of heroin involved equaled or exceeded 10 grams but less than 50 grams.

{¶ 3} On July 23, 2018, appellant entered guilty pleas on each count of the indictment. The trial court accepted appellant's guilty pleas after a Crim.R. 11 colloquy.[1] The trial court ordered a pre-sentence investigation ("PSI") pursuant to the joint recommendation of the prosecutor and defense counsel and deferred the matter for sentencing.

{¶ 4} On August 23, 2018, the trial court conducted a sentencing hearing at which the court imposed a sentence of 11 years imprisonment on Count 1 and 5 years imprisonment on Count 2, with the sentences to be served consecutively. In addition, the court imposed maximum fines of $20,000 on Count 1 and $15,000 on Count 2, for a total fine of $35,000. The court memorialized its judgment in an entry filed August 27, 2018 and filed a corrected judgment entry on September 28, 2018.

{¶ 5} Appellant filed a timely notice of appeal from the trial court's initial judgment entry and sets forth the following three assignments of error for our consideration:

> [I]. Ovier Delgadillo-Banuelos received ineffective assistance of counsel when counsel failed to file an affidavit of indigency on Mr. Delgadillo-Banuelos' behalf, or otherwise advocate against financial sanctions, and Mr. Delgadello-Banuelos was in fact indigent.
>
> [II]. Ovier Delgadillo-Banuelos received ineffective assistance of counsel when his attorney failed to argue that the two counts of trafficking heroin were allied offenses.
>
> [III]. The trial court committed plain error when it imposed multiple sentences on the two counts of trafficking heroin, which were allied offenses.

{¶ 6} For ease of analysis, we address appellant's assignments of error out of order. In his third assignment of error, appellant contends that the trial court committed plain error when it imposed multiple sentences on the two counts of trafficking heroin, as the counts constituted allied offenses of similar import. We disagree.

---

[1] All trial proceedings in this case were facilitated by court-appointed Spanish language interpreters.

{¶ 7} As noted in appellant's assignment of error, he did not object at the sentencing hearing or raise the issue of allied offenses before the trial court. As such, appellant has forfeited all but plain error. *State v. Rogers,* 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 3. Forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. *Id.* In a plain error analysis, an accused must demonstrate a reasonable probability that the convictions are allied offenses of similar import committed with the same conduct and without a separate animus. *Id.* Absent such a showing, an accused "cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error." *Id.*

{¶ 8} The allied offenses statute, R.C. 2941.25, provides:

(A) Where the same conduct by [the] defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct result in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 9} Construing R.C. 2941.25, the Supreme Court of Ohio has explained that "a 'conviction' consists of a guilty verdict *and* the imposition of a sentence or penalty." (Emphasis sic). *State v. Whitfield,* 124 Ohio St.3d 319, 2010-Ohio-2, ¶ 12. As such, "R.C. 2941.25(A) 's mandate that a defendant may be 'convicted' of only one allied offense is a protection against multiple sentences rather than multiple convictions." *Id.* at ¶ 18.

{¶ 10} "To determine whether two offenses are allied offenses that merge into a single conviction, a court must evaluate three separate factors: the conduct, the animus, and the import." *State v. Harris,* 10th Dist. No. 15AP-683, 2016-Ohio-3424, ¶ 42, citing *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, paragraph one of the syllabus. "If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance— in other words, each offense caused separate, identifiable harm, (2) the offenses were

committed separately, or (3) the offenses were committed with separate animus or motivation." *Ruff* at ¶ 25. The allied-offense analysis "is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id.* at ¶ 26.

{¶ 11} At the plea hearing, the state's recitation of the facts established that appellant was the subject of a Columbus police investigation for approximately three weeks prior to his arrest on December 27, 2017. During that investigation, the police identified appellant's residence as well as a motel room where appellant temporarily stayed and stored drugs. The police also identified one of appellant's customers, who reported that he had been purchasing heroin from appellant for approximately 3 years. On December 27, 2017, police recovered 48 grams of heroin during a search of appellant's vehicle, and later that day recovered 160 grams of heroin from appellant's motel room. The state further asserted that the heroin found at both locations was to be sold on the streets of Columbus.

{¶ 12} The PSI report provided a more detailed recitation of the facts underlying appellant's crimes. According to the report, on December 27, 2017, the Central Ohio HIDTA Drug Task Force conducted surveillance on appellant, who was suspected of delivering small amounts of heroin to multiple locations in the Central Ohio area. At 1:51 p.m., police observed appellant meet a man in the parking lot of a retail establishment. The man entered appellant's vehicle; he returned to his own vehicle less than one minute later. The man drove away, but was later apprehended by the police. The man admitted to purchasing one gram of black tar heroin for $40 from appellant; he further admitted that he had been purchasing heroin from appellant for the past three years.

{¶ 13} Thereafter, upon further surveillance of appellant, the police observed him enter a residence at 835 Seymour. Appellant returned to his vehicle, and police subsequently effectuated a traffic stop. Pursuant to a search of appellant's person and his vehicle, police recovered a total of 49.071 grams of heroin, which had been separated into four plastic bags. Police also recovered 2 cell phones and $1,711 in cash. Police transported appellant to police headquarters for processing and a formal interview. Appellant refused consent to search his motel room at 1309 St. James Lutheran Lane, so the police obtained a search warrant, which was executed at 8:02 p.m. Pursuant to that search, the police recovered a total of 159.1 grams of heroin, which had been separated into 9 plastic bags/balloons. At 8:30 p.m., the police executed a second search warrant at 910 Center

Street, a mobile home police had observed appellant enter during the time he was under surveillance. Police believed this location was a "stash house" for drugs. (PSI at 4.). Pursuant to that search, the police recovered more heroin and 4 bottles of pills. The laboratory results of the drugs recovered at this location were not included in the PSI report.

{¶ 14} Appellant was found guilty of two counts of trafficking heroin in violation of R.C. 2925.03(A)(2), which forbids a person to "knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person."

{¶ 15} Appellant contends that the 2 counts of heroin trafficking were allied offenses subject to merger because: (1) they were not committed separately, in that the drugs were recovered on the same day and were the same substance (i.e., heroin); (2) they were not committed with a separate animus, as both counts involved a singular motivation (i.e., distribution); and (3) they were not dissimilar in import or significance, as they did not involve separate victims and no separate or identifiable harm resulted (i.e., harm only to society in general). Appellant relies on *State v. Daboni,* 4th Dist. No. 18CA3, 2018-Ohio-4155 in support of his argument. There, Daboni was found guilty of 2 counts of trafficking in heroin and 1 count of possession of heroin arising from the search of his residence on September 4, 2014. The trafficking counts stemmed from recovery of approximately 20 grams of separately packaged heroin from 2 different locations in the downstairs portion of Daboni's residence. The possession count stemmed from recovery of approximately 25 grams of non-packaged heroin from an upstairs bedroom closet of the same residence. The trial court merged the trafficking counts for purposes of sentencing, but refused to merge the possession count with the trafficking counts.

{¶ 16} On appeal, the court concluded that the trial court should have merged the trafficking and possession offenses for purposes of sentencing. Specifically, the court found that the offenses were similar in significance and import because the victims of the offenses were the same, i.e., society in general, and the harm was not separate and identifiable. The court further found that the offenses were not committed separately, as all the heroin was

found on the same day inside Daboni's residence. Lastly, the court found that the offenses were committed with the same animus or motivation, i.e., to traffic the heroin.

{¶ 17} *Daboni* is inapposite, as the 2 heroin stashes were recovered pursuant to a single search conducted inside the same residence, albeit in different locations in the residence. Here, the heroin was recovered during 2 separate searches which yielded differing quantities of heroin and which occurred at separate times and at 2 different locations. As noted, the initial search, which yielded approximately 49 grams of heroin, was conducted of appellant's person and vehicle pursuant to a traffic stop; the subsequent search, which yielded approximately 160 grams of heroin, was conducted at appellant's motel room pursuant to a search warrant.

{¶ 18} Moreover, appellant acknowledges this court's decision in *State v. Gomez,* 10th Dist. No. 16AP-560, 2017-Ohio-8832, wherein we found no plain error in the trial court's failure to merge five trafficking counts involving different quantities of the same type of drug (i.e., heroin) recovered on the same day at five different locations.[2] In so concluding, we noted Gomez's reliance on several federal cases holding that possession of drug stashes recovered on the same day constitute a single offense under the federal statute for possession with intent to distribute (21 U.S.C. 841(a)(1)). Appellant cites two of the same federal cases in support of his argument here. *See United States v. Stephens,* 118 F.3d 479 (6th Cir.1997); *United States v. Woods,* 568 F.2d 509 (6th Cir.1978). However, in *Gomez,* this court noted that other federal courts "have held that convictions for multiple counts of possession on the same date involving distinct stashes of drugs do not raise multiplicity or double jeopardy issues." *Id.* at ¶ 20, fn. 1. In particular, this court cited *State v. Maldonado,* 849 F.2d 522, 524 (11th Cir.1988); *Davis v. Berghuis,* E.D.Mich. No. 2:07-CV-10129 (Apr. 30, 2008); and *United States v. Williams,* 339 Fed.Appx. 654, 658 (7th Cir.2009).[3]

---

[2] Gomez challenged the five counts in the indictment as multiplicitious. We observed, however, that under Ohio law, "the primary legislative statement on multiplicity is set forth in R.C. 2941.25, which addresses allied offenses of similar import." *Id.* at ¶ 21, citing *State v. Damron,* 10th Dist. No. 12AP-209, 2012-Ohio-5977, ¶ 8; *State v. Painter,* 12th Dist. No. CA2014-03-022, 2014-Ohio-5011, ¶ 17.

[3] *Maldonado* involved two different quantities of cocaine found in two separate locations on the same date; *Davis* involved two different quantities of cocaine found on the defendant and in a bedroom on the same date; and *Williams* involved two different quantities of crack cocaine found in the defendant's car and his apartment on the same date.

{¶ 19} The *Gomez* court further recognized and relied on decisions of other Ohio courts of appeals finding that recovery of drugs on the same date is not dispositive of the allied offense issue. *Id.* at ¶ 24, citing *State v. Lewis,* 12th Dist. No. CA2008-10-045, 2012-Ohio-885, ¶ 21 (defendant sold less than five grams of crack cocaine to an undercover officer, left the scene, and was later stopped by law enforcement officers who found crack cocaine rocks and a bag of crack cocaine defendant had discarded at the time he was stopped); *State v. Williams,* 5th Dist. No. 11-CA-115, 2012-Ohio-3211, ¶ 20 (selling or offering to sell on same date separated in time and space from possession of same type of drug in a different location); and *State v. Ward*, 3d Dist. No. 13-10-11, 2011-Ohio-254, ¶ 29 (three separate sales of marijuana on same date considered three separate transactions).

{¶ 20} Appellant's attempt to distinguish *Gomez* on grounds that it involved much larger quantities of heroin than that in the present case is unavailing. The import of *Gomez* is that where the facts presented indicate law enforcement's recovery on the same date of differing quantities of the same type of illicit substance at different locations, R.C. 2941.25 permits a conviction and sentence for each of the offenses. Thus, pursuant to *Gomez,* the trial court committed no error, plain or otherwise, in sentencing appellant separately for the two trafficking offenses.

{¶ 21} Appellant's third assignment of error is overruled.

{¶ 22} As appellant's first and second assignments of error contend that he received ineffective assistance of counsel during his trial court proceedings, we address them together.

{¶ 23} To establish ineffective assistance of counsel, an accused must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the accused. *State v. Jackson,* 107 Ohio St.3d 53, ¶ 133 (2005), citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The failure to make either showing is fatal to the claim. *State v. Bradley,* 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697. ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

{¶ 24} To demonstrate deficient performance, an accused must prove that counsel's performance fell below an objective level of reasonable representation. *Jackson* at ¶ 133.

The accused must overcome the strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland* at 689. To establish prejudice, an accused must demonstrate that a reasonable probability exists that but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Hale,* 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 204, citing *Strickland* at 687-88.

{¶ 25} Appellant first contends that trial counsel was ineffective in failing to file an affidavit of indigency alleging that he was unable to pay the mandatory fines set forth in R.C. 2929.18(B)(1) applicable to his felony drug offenses. Appellant maintains that the trial court would not have imposed the fines upon him had the affidavit of indigency been filed. We disagree.

{¶ 26} R.C. 2929.18(B)(1) specifies that for a first- or second-degree felony violation of R.C. Chapter 2925, "the sentencing court shall impose upon the offender a mandatory fine of at least one-half of, but not more than, the maximum statutory fine amount authorized for the level of the offense pursuant to division (A)(3) of this section." For a first-degree felony, the maximum fine is $20,000; for a second-degree felony, the maximum fine is $15,000. R.C. 2929.18(A)(3)(a) and (b). However, R.C. 2929.18(B)(1) further provides that "[i]f an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose such a mandatory fine upon the offender."

{¶ 27} Shortly after he was indicted, appellant filed an affidavit of indigency alleging he was financially unable to retain private counsel to defend him in the matter. He did not, however, file a separate affidavit prior to sentencing alleging he was "indigent and unable to pay the mandatory fine." This court has determined that "[a]n offender's indigency for purposes of receiving appointed counsel is separate and distinct from his or her indigency for purposes of avoiding having to pay a mandatory fine." *State v. Pilgrim,* 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 79 (10th Dist.), citing *State v. Gipson,* 80 Ohio St.3d 626, 631-33 (1998). There is a " 'difference between a defendant's inability to raise an initial retainer in order to obtain trial counsel and the ability to gradually pay an imposed mandatory fine over a period of time.' " *State v. Burnett,* 10th Dist. No. 08AP-304, 2008-Ohio-5224, ¶ 9,

quoting *State v. Banks,* 6th Dist. No. WD-06-094, 2007-Ohio-5311, ¶ 15. Accordingly, an accused may not rely on the affidavit of indigency for the purpose of receiving appointed counsel to demonstrate indigency for the purpose of avoiding payment of a mandatory fine after conviction. *Pilgrim* at ¶ 79, citing *Banks* at ¶ 15.

{¶ 28} The failure to file an R.C. 2929.18(B)(1) affidavit alleging an offender's indigency and inability to pay a mandatory fine may constitute ineffective assistance of counsel where the record demonstrates a reasonable probability that the trial court would have found the defendant indigent, thereby relieving him of the obligation to pay a mandatory fine. *State v. Parsley,* 10th Dist. No. 09AP-612, 2010-Ohio-1689, ¶ 65, citing *State v. Gilmer,* 6th Dist. No. OT-01-015, 2002-Ohio-2045. However, an offender who files an affidavit alleging that he or she is indigent and is unable to pay a mandatory fine is not automatically entitled to a waiver of the mandatory fine. *State v. Smith,* 10th Dist. No. 16AP-772, 2017-Ohio-7740, ¶ 46, citing *State v. Small,* 10th Dist. No. 14AP-659, 2015-Ohio-3640, ¶ 40-41; *Gipson* at 634. For purposes of R.C. 2929.18(B)(1), being "indigent" and being "unable to pay" are not the same. Indigency concerns a defendant's current financial situation, whereas an inability to pay encompasses an offender's future financial situation as well. *Id.* at 636. The burden is upon the offender to affirmatively demonstrate that he or she is indigent and unable to pay the mandatory fine. *Id.* at 635.

{¶ 29} Nonetheless, before imposing a financial sanction, including a mandatory fine under R.C. 2929.18(B)(1), the court must consider the offender's present and future ability to pay the amount of the sanction or fine. R.C. 2929.19(B)(5). *Pilgrim* at ¶ 76. The statute does not set forth express factors that must be considered or specific findings that must be made regarding the offender's ability to pay. *Id.* However, there must be some evidence in the record to demonstrate that the trial court acted in accordance with the legislative mandate that it consider the offender's present and future ability to pay the sanction or fine. *Smith* at ¶ 47, citing *State v. Hayes,* 10th Dist. No. 08AP-233, 2009-Ohio-1100, ¶ 14; *State v. Saracco-Rios,* 12th Dist. No. CA2016-02-011, 2016-Ohio-7192, ¶ 10, citing *State v. Lang,* 12th Dist. No. CA2011-03-007, 2011-Ohio-5742, ¶ 12. Compliance with R.C. 2929.19(B)(5) may be shown through the trial court's consideration of a PSI report, which typically provides financial and personal information regarding the offender. *Id.*

{¶ 30} The PSI report in the instant case reveals that appellant was born and raised in Mexico and does not read or write English. His legal name is Miguel Angel Lopez Figueroa; Ovier Delgadillo-Banuelos is an alias. He completed formal schooling through the 9th grade. He dropped out of school so he could work to support his family. Appellant was 38 years old at the time of the instant offenses. He is married and has two school-age daughters. His wife and daughters still reside in public housing in Mexico. Appellant described his physical health as "excellent." (PSI report at 9.) He is medication-free and has never been hospitalized or undergone any surgeries. He has no mental health or alcohol related issues.

{¶ 31} Appellant asserts his finances are "a bit bad." *Id.* at 10. Specifically, he alleges he has no assets, is behind on his water bill, has an outstanding bank loan, and owes money on his house in Mexico. Although he was employed at an auto parts store, he could not pay all of his bills. He acknowledges that he has employment experience with auto parts and customer service. Appellant alleges that the bank to whom he owed money put him in contact with the individual for whom he sold drugs in the United States.

{¶ 32} Appellant came to the United States illegally sometime prior to July 2013 and was deported on July 16, 2013 following his conviction for felony possession of a controlled substance. According to appellant, he returned to the United States illegally only one week prior to his arrest on the instant offenses. While in the United States, he has been unemployed and made money through the sale of drugs. He refuses to provide any details about his involvement in the drug trade, including for whom he is working and how much he is paid. As noted above, the police recovered $1,711 in cash on appellant's person pursuant to a search incident to his arrest. In addition to the money he makes trafficking drugs, appellant also receives money from his wife who works in Mexico. As to future employment, appellant notes that he faces mandatory prison time as well as the possibility of deportation following completion of his prison term.

{¶ 33} At the sentencing hearing, trial counsel reiterated much of the material included in the PSI report pertaining to appellant's personal and financial information, albeit in the context of urging the court to impose a "minimal sentence." (Aug. 23, 2018 Sentencing Hearing Tr. at 3.) Trial counsel expounded upon the PSI report, stating that appellant "had to do what he had to do for his family" because his wife is scheduled for

"high-risk surgery" and he could not afford the school fees for his high school daughter. *Id.* at 5.

{¶ 34} While not expressly stating that it reviewed the PSI report in considering the mandatory fine imposed by R.C. 2929.18(B)(1), the trial court referred to the information contained in the report. In particular, the court asked the state if it knew the name of the bank that appellant claimed set him up in the drug trade in the United States In addition, the trial court noted that appellant had previously been deported on a drug conviction, and had returned to the United States illegally and again engaged in the drug trade. The trial court noted that it did not find convincing appellant's expressions of apology and remorse, other than that appellant likely regretted that his family in Mexico was harmed because he was not there to support them with drug activity in the United States. Moreover, a trial court is not required to expressly state that it considered the PSI or the appellant's ability to pay. *Smith*, 10th Dist. No. 16AP-772, 2017-Ohio-7740, at ¶ 47, citing *State v. Parker,* 2d Dist. No. 03CA0017, 2004-Ohio-1313, ¶ 42; *State v. Tate,* 2d Dist. No. 25386, 2013-Ohio-5167, ¶ 54 (where trial court did not expressly state that it considered PSI, reviewing court observed that "in the absence of anything in the record to suggest otherwise, we must presume that the [trial] court made the required considerations [about the defendant's ability to pay] when it reviewed the [PSI]"). *See also State v. LeGrant,* 2d Dist. No. 2013-CA-44, 2014-Ohio-5803, ¶ 13 (finding the trial court considered ability to pay based on its consideration of the PSI).

{¶ 35} Here, the trial court "impose[d] the full $35,000 in fines in the event that [appellant] has any assets that show up." *Id.* at ¶ 11. In addition, as part of its sentencing entry, the trial court explicitly stated that it had "considered Defendant's present and future ability to pay a fine and financial sanction." (Aug. 27, 2018 Jgmt. Entry at 2.). A trial court's statement in a judgment entry that it considered the offender's present and future ability to pay a fine is evidence that the trial court considered the offender's ability to pay. *Smith* at ¶ 49.

{¶ 36} Appellant contends that the trial court's imposition of fines "in the event that [appellant] has any assets that show up," constitutes an acknowledgement by the trial court that appellant has no present ability to pay the mandatory fines. While it is true that appellant is not currently employed and will not be during his prison confinement, R.C.

2929.19(B)(5) specifically requires a trial court to consider the offender's *future ability* to pay as well as his present ability to pay. When evaluating the indigency of an offender opposing the mandatory fine, a trial court is not limited to the indigency status of the offender at the time the fine was imposed. *State v. Conn,* 12th Dist. No. CA2014-04-059, 2015-Ohio-1766, ¶ 14, citing *State v. McDowell,* 11th Dist. No. 2001-P-0149, 2003-Ohio-5352, ¶ 69. Here, the trial court's statement regarding "assets that show up" confirms that the trial court expressly considered appellant's future ability to pay the fines. Moreover, a trial court is not precluded from imposing a fine on an able-bodied offender who is fully capable of work but who happens to be indigent and unemployed at the moment of sentencing. *Gipson,* 80 Ohio St.3d at 636; *Smith* at ¶ 49 (nothing in record suggested that defendant was not an able-bodied person with some employment potential following his release from prison).

{¶ 37} Appellant will be in his early 50's when he is released from prison and, as admitted in the PSI report, is in "excellent" physical condition and has employment experience in auto parts sales and customer service. Although appellant likely will be deported following completion of his prison sentence, no evidence suggests that his past auto parts/customer service experience cannot be applied to employment in Mexico. Indeed, although the PSI report does not specifically so state, it appears that appellant's employment experience occurred in Mexico. Further, the trial court did not impose a timeframe for payment of the fines. Indeed, R.C. 2929.19(B)(5) contemplates a gradual repayment of fines over a period of time. *State v. Burnett,* 10th Dist. No. 08AP-304, 2008-Ohio-5224, ¶ 9.

{¶ 38} Appellant's reliance on two cases from other appellate districts is misplaced, as both are distinguishable. In *State v. Hale*, 5th Dist. No. 14-CA-00010, 2014-Ohio-4981, the court concluded that trial counsel was ineffective in failing to file an affidavit of indigency alleging that Hale was unable to pay the mandatory fine in R.C. 2929.18 applicable to his felony drug offense. The court based its conclusion, in part, upon trial counsel's assertions at the change of plea hearing that 57-year-old Hale had multiple health problems, including oxygen tank dependence, hypertension, COPD, IBS, coronary artery disease, obstructive sleep apnea, seizure disorder, and complications from a stroke. The court also noted that the affidavit submitted in support of appointment of counsel indicated

Hale's source of income to be Social Security disability benefits and that there was no indication in the record that the trial court considered Hale's present and future ability to pay the fine as required by R.C. 2929.19(B)(5). In contrast, and as noted above, the PSI report in the instant case reveals that appellant is in "excellent" health and is medication-free; in addition, the record indicates that the trial court complied with R.C. 2929.19(B)(5).

{¶ 39} In *State v. Andrews,* 1st Dist. No. C-110735, 2012-Ohio-4664, the court held that the trial court committed plain error in ordering Andrews to pay a $10,000 fine pursuant to his second-degree felonious assault conviction. Specifically, the court found that the record contained no evidence that the trial court considered Andrews' present or future ability to pay the fine as required by R.C. 2929.19(B)(5). The court further found that no PSI report was completed and that no evidence was elicited at the sentencing hearing regarding Andrews' present or future ability to pay the fine. The court reasoned that "[b]ecause the record is completely silent on the matter, the trial court committed plain error in ordering Andrews to pay the fine." *Andrews* at ¶ 32. Pursuant to this conclusion, the court also held that trial counsel was ineffective in failing to object to the trial court's imposition of the fine. *Id.* at ¶ 37. In contrast to the instant case, *Andrews* does not involve the imposition of a mandatory fine or the filing of an affidavit of indigency pursuant to R.C. 2929.18(B)(1). Further, the record in this case includes a PSI report and evidence establishing the trial court's consideration of appellant's present or future ability to pay the mandatory fine as required by R.C. 2929.19(B)(5).

{¶ 40} Because the record in this case contains evidence that the trial court considered appellant's present and future ability to pay the mandatory fines and made no determination that he is unable to pay those fines, appellant has failed to demonstrate that his trial counsel was ineffective for failing to file an affidavit of indigency specific to the imposition of mandatory fines, as there is no reasonable probability that had trial counsel done so, the trial court would have found appellant indigent and relieved him of the obligation to pay the fines.

{¶ 41} Appellant next contends that trial counsel was ineffective in failing to argue that his heroin trafficking offenses should merge for purposes of sentencing. Given our conclusion in the third assignment of error that the offenses were not allied, trial counsel's

failure to argue merger did not constitute ineffective assistance of counsel. *See State v. White,* 12th Dist. No. CA2018-12-087, 2019-Ohio-3053, ¶ 21.

{¶ 42} Having found that appellant's trial counsel was not ineffective in failing to file an affidavit of indigency specific to the mandatory fines pursuant to R.C. 2929.18 or in failing to argue that the two counts of heroin trafficking should merge for purposes of sentencing, we overrule appellant's first and second assignments of error.

{¶ 43} Having overruled appellant's first, second, and third assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

LUPER SCHUSTER and NELSON, JJ., concur.