[Cite as *State v. Dwyer*, 2022-Ohio-490.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-16 |
| | : | |
| v. | : | Trial Court Case No. 2020-CR-831 |
| | : | |
| JAMES A. DWYER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of February, 2022.

. . . . . . . . . . .

MARCY A. VONDERWELL, Atty. Reg. No. 0078311, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, 61 Greene Street, Suite 200, Xenia, Ohio 45385
      Attorney for Plaintiff-Appellee

DAVID R. MILES, Atty. Reg. No. 0013841, 1160 East Dayton-Yellow Springs Road, Fairborn, Ohio 45324
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant James A. Dwyer appeals from his conviction for attempted murder, aggravated robbery, and felonious assault. Dwyer contends the State failed to present evidence sufficient to support the conviction for attempted murder. He also claims all three convictions were against the manifest weight of the evidence. Finally, Dwyer contends the trial court erred in sentencing. For the reasons set forth below, the judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

## I.      Facts and Procedural History

{¶ 2} On December 23, 2020, Dwyer was indicted on one count of attempted felony murder in violation of R.C. 2923.02(A) and R.C. 2903.02(B); one count of attempted murder in violation of R.C. 2923.02(A) and R.C. 2903.02(A); one count of aggravated robbery (deadly weapon) in violation of R.C. 2911.01(A)(1); one count of felonious assault (deadly weapon) in violation of R.C. 2903.11(A)(2); and one count of having a weapon while under disability in violation of R.C. 2923.13(A)(2). All of the counts except for having a weapon under disability included a three-year firearm specification.

{¶ 3} Prior to trial, the trial court dismissed the counts of attempted felony murder and having a weapon while under disability. The matter proceeded to a jury trial on the remaining counts, where the following evidence was adduced.

{¶ 4} Both Dwyer and Tyree Day were romantically involved with a woman named Shayla Webb. On December 16, 2020, Day was with Webb at her Fairborn apartment.

At some point, Dwyer came to the apartment, and his presence resulted in a physical altercation between Dwyer and Day. After the fight stopped, Dwyer left.

{¶ 5} Day remained at Webb's apartment overnight. At approximately 6:30 a.m. on December 17, Day exited the bathroom and encountered Dwyer, who had returned to the apartment.[1] Dwyer brandished a handgun and ordered Day to accompany him toward the apartment door. As Dwyer opened the door, Day shoved him and ran out of the apartment building. Day ran across the street toward an apartment building located several buildings away from Webb's residence. As he got to the back of that building, he lost his shoe, tripped, and fell to the ground. At this point, Dwyer caught up to Day.

{¶ 6} While Day remained on the ground, Dwyer pointed the gun at Day's head and pulled the trigger two times. Day testified that the gun "clicked" but did not fire. Tr. p. 38. Dwyer then ordered Day to give him Day's shoes, belt and jacket. After the items were handed over, Dwyer shot Day in the leg and ran away.

{¶ 7} Fairborn Police Officer Joseph Walton was dispatched to Webb's apartment building following multiple calls regarding a disturbance and a man with a weapon. During his conversation with Webb, Walton issued a description of the perpetrator.

{¶ 8} Fairborn Police Officer Matthew Bracey was en route to the scene when he heard Walton's description of the perpetrator. When Bracey arrived at an intersection several buildings away from Webb's apartment, he pulled his car over to the side of the road and stopped in order to begin searching for the suspect. A man, later identified as Day, appeared and knocked on the passenger-side window of Bracey's cruiser. When

---

[1] During his police interview, Dwyer stated he returned to the apartment at Webb's request.

Bracey rolled down the window, Day informed him of the shooting. As Day was talking, he pointed and stated, "that's the guy who shot me." Tr. p. 85. Bracey then observed a man, later identified as Dwyer, at the apartment building located behind the apartment building where Day had been shot. Bracey observed that Dwyer started walking toward Webb's apartment. Bracey exited his cruiser and ordered Dwyer to stop. However, Dwyer merely looked at Bracey and continued to walk away from him. Dwyer approached Walton, who was still in the process of interviewing Webb. As Dwyer neared, Webb pointed behind Walton and identified Dwyer as the shooter. Dwyer was then detained without incident.

{¶ 9} No weapon was found on Dwyer when he was detained, and a search of the area did not produce a gun. However, the items of clothing taken from Day were located at the spot where Bracey had originally observed Dwyer. Day was transported to a local hospital for treatment of the gunshot wound to his leg.

{¶ 10} Dwyer was transported to the police department, where he was interviewed by Sergeant James Hern and Detective Sean Pettit. Dwyer stated that he had been at Webb's apartment at her request. Dwyer further stated that he took Webb and a female friend of Webb's to a nearby gas station; when they returned to Webb's apartment, Dwyer and Day argued. Dwyer indicated that Day had had a gun and that Day had chased Dwyer from the apartment. Dwyer also indicated he had been knocking on the door of an apartment located in the building where Bracey had originally spotted him. However, he admitted that he did not know the tenant of that apartment. When asked about Day's clothes that had been found near him, Dwyer stated that he had been walking through the complex grounds when he observed the items on the ground and decided to take

them. Dwyer indicated that Day must have taken the items off while he was running away. When confronted with a video of a portion of the interaction inside Webb's apartment, Dwyer became upset and ended the interview.[2] The video showed Day standing inside the apartment with his hands in the air in a "submissive posture." Tr. p. 177.

{¶ 11} The jury convicted Dwyer on the three counts presented by the State and the three firearm specifications. The trial court imposed an indefinite minimum prison term of 10 years with a maximum prison term of 15 years for the attempted murder conviction; a minimum and maximum prison term of eight years for the aggravated robbery conviction, and a minimum and maximum prison term of six years for the felonious assault conviction. All three terms were ordered to run consecutively, for a minimum prison term of 24 years and a maximum prison term of 29 years. The trial court also imposed three-year prison sentences for each of the firearm specifications to be run consecutively and prior to the sentence of 24 to 29 years, for an aggregate prison term of 33 to 38 years.

{¶ 12} Dwyer appeals.

## II.    Sufficiency of the Evidence

{¶ 13} Dwyer's first assignment of error states as follows:

APPELLANT'S CONVICTION FOR ATTEMPTED MURDER IS BASED

UPON INSUFFICIENT EVIDENCE

---

[2] The video was obtained from Webb's friend, who had recorded part of the incident with her cell phone.

{¶ 14} Dwyer asserts that the State did not present sufficient evidence to sustain his conviction for attempted murder. Dwyer argues that, apart from Day's testimony, there was no direct or circumstantial evidence proving that he had a gun or that he tried to fire it while aiming at Day's head. Dwyer further argues that the State did not present evidence demonstrating his purpose regarding the alleged actions.

{¶ 15} An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jenks* at 273.

{¶ 16} Dwyer was convicted of attempted murder in violation of R.C. 2903.02(A) and R.C. 2923.02(A). Murder is proscribed by R.C. 2903.02(A) which provides that "[n]o person shall purposely cause the death of another[.]" R.C. 2923.02(A) defines "attempt" as "purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, * * * engag[ing] in conduct that, if successful, would constitute or result in the offense." Relevant here, a person acts with "purpose" when he or she has the "specific intention to cause a certain result, or * * * to engage in conduct of [a certain] nature." R.C. 2901.22(A).

{¶ 17} As set forth above, Day testified that he fled Webb's apartment and ran behind a nearby apartment building; he then tripped, lost his shoe, and fell to the ground. When Dwyer caught up to Day, he stood over Day, pointed the gun at Day's head and pulled the trigger a couple of times. Ultimately, after robbing Day, Dwyer used the gun to shoot Day in the leg.

{¶ 18} Dwyer first asserts that the State failed to present legally sufficient evidence because it did not produce the firearm alleged to have been used during the commission of the offenses. We disagree. This court has previously noted that the existence of a firearm "may be inferred from the surrounding facts and circumstances." (Citations omitted.) *State v. Vann*, 2d Dist. Montgomery No. 22818, 2009-Ohio-5308, ¶ 27.

{¶ 19} Day testified that Dwyer pointed a gun at him. The jury was free to believe all, part, or none of Day's testimony, and it apparently chose to believe this portion of his testimony. The fact that Day actually suffered a gunshot wound to his leg obviously bolsters his testimony. Additionally, the record demonstrates that Dwyer had time and the opportunity to conceal a gun prior to the arrival of the police. The mere fact that the police were unable to find a gun during their search of the area did not preclude the conclusion that Dwyer had a gun.

{¶ 20} Dwyer next asserts that the State failed to prove he acted purposefully. Again, we disagree. "[A] defendant's intent may be inferred from all the surrounding facts and circumstances of the crime." *State v. McRae*, 1st Dist. Hamilton No. C-180669, 2020-Ohio-773, ¶ 11, citing *State v. Were*, 1st Dist. Hamilton No. C-030485, 2005-Ohio-376, ¶ 180, quoting *State v. Herring*, 94 Ohio St.3d 246, 266, 762 N.E.2d 940 (2002). "Particularly relevant here, 'in an attempted-murder prosecution, a defendant's specific

intent to kill another can be inferred from the defendant's shooting in the victim's direction' and is strongly corroborative of criminal purpose." *Id.*, quoting *State v. MacDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, ¶ 17-18 (Other citations omitted.). "This flows from the fact that a gun is considered a 'deadly weapon,' and therefore its discharge in another's direction supports an inference that the shooter harbored the specific intent to kill." *McRae* at ¶ 11. Day testified that Dwyer pointed the gun at his head and pulled the trigger two times. The jury was free to credit this testimony in determining whether Dwyer committed the offense of attempted murder.

{¶ 21} Construing the evidence most strongly in favor of the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Dwyer purposely attempted to cause Day's death. Therefore, the first assignment of error is overruled.

### III. Manifest Weight of the Evidence

APPELLANT'S CONVICTIONS FOR ATTEMPTED MURDER, AGGRAVATED ROBBERY, AND FELONIOUS ASSAULT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

{¶ 22} Dwyer's argument in support of this assignment of error centers upon his assertion that Day's testimony was not credible.

{¶ 23} A weight-of-the-evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. *State v. Jones*, 2d Dist. Montgomery No. 28179, 2019-Ohio-2940, ¶ 13, quoting *State v. Wilson*, 2d Dist. Montgomery No. 2258, 2009-Ohio-525, ¶ 12. When evaluating whether a conviction is against the manifest weight of the evidence, an

appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). But we generally defer to a jury's credibility assessments based upon the jury's ability to observe and assess the witnesses' demeanor while testifying. *State v. Hagen*, 2d Dist. Champaign No. 2018-CA-2, 2018-Ohio-4045, ¶ 21.

{¶ 24} In addition to attempted murder, Dwyer was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which states, "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon." He was also convicted of aggravated robbery as proscribed by R.C. 2911.01. This statute provides that the offense is committed when a person "in attempting or committing a theft offense, * * * or in fleeing immediately after the attempt or offense, * * * inflict[s], or attempt[s] to inflict, serious physical harm on another." R.C. 2911.01(A)(3).

{¶ 25} Dwyer's assertion that Day was not credible hinges upon his assertion that Day was under the influence of marijuana. He also claims that Day's credibility was further damaged by the lack of corroborating witnesses, the failure to find the gun, and the fact that Day's clothes were not in Dwyer's possession when Dwyer was apprehended.

{¶ 26} During his testimony, Day stated that he had been robbed and then shot by Dwyer. Day candidly admitted that he had smoked two marijuana joints on the evening

of December 16. He also stated that the effects had worn off prior to the 6:30 a.m. confrontation on December 17. Additionally, the mere facts that no gun was found and no corroborating witnesses testified did not render Day's testimony inherently incredible. The jury was fully capable of determining what weight, if any, to assign to the lack of a gun or corroborating witnesses. Again, Day did suffer a gunshot wound, and Dwyer had had the time and the opportunity to conceal the weapon. Additionally, the video footage from the apartment showed Day with his hands in the air, a fact that the jury could have viewed as bolstering Day's claim that Dwyer had a gun. Finally, we fail to discern how the fact that Dwyer was not holding Day's clothing at the time of his apprehension affected Day's credibility. Although Dwyer claimed that he observed the clothes on the ground and that Day must have discarded them while running, Dwyer admitted that he had the clothes in his possession at some point after the two exited the apartment.

{¶ 27} From our examination of the record, we cannot say that the jury clearly lost its way in crediting Day's testimony. There was evidence presented to the jury upon which it could have relied in finding Dwyer guilty of all three charges. Therefore, Dwyer's second assignment of error is overruled.

## IV. Merger Analysis

{¶ 28} The third assignment of error presented by Dwyer states:

THE TRIAL COURT ERRED IN NOT MERGING THE OFFENSES OF ATTEMPTED MURDER AND FELONIOUS ASSAULT

{¶ 29} Dwyer contends that the offenses of attempted murder and felonious assault should have been merged. In support, he asserts that his "actions, if believed,

were one set of circumstances of continual conduct involving the same alleged victim."

{¶ 30} The need to discern whether crimes are allied offenses arises from the Double Jeopardy Clause of the Fifth Amendment, which protects individuals from multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). The Ohio Legislature has codified this protection in R.C. 2941.25, which states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 31} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Supreme Court of Ohio clarified the applicable standard to use when determining whether offenses merge as allied offenses of similar import, as follows:

> Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can

govern every situation.

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Ruff* at ¶ 30-31.

{¶ 32} The de novo standard of review is utilized with regard to a trial court's decision on merger. *State v. Barnes*, 2d Dist. Montgomery No. 28613, 2020-Ohio-4150, ¶ 10.

{¶ 33} To establish the elements of attempted murder in this case, the State had to prove that Dwyer engaged in conduct that, if successful, would have resulted in purposely causing the death of another. R.C. 2903.02(A); R.C. 2923.02(A). To establish the elements of felonious assault, the State had to prove that Dwyer knowingly caused physical harm to another by means of a deadly weapon. R.C. 2903.11(A)(2).

{¶ 34} The conduct of pointing and shooting a gun at a person can result in the death of that person. The same conduct can also fall short of causing death but can cause physical harm. However, in this case, the convictions for both attempted murder and felonious assault were proper because they involved separate conduct. The evidence, primarily consisting of Day's testimony, reflected that the offense of attempted

murder occurred when Dwyer pointed the gun at Day's head while pulling the trigger. When that was unsuccessful, Dwyer then, with gun in hand, robbed Day of his items of clothing. Once those items were handed over, Dwyer shot Day in the leg. Thus, the felonious assault was separated from the attempted murder by the intervening robbery.

{¶ 35} Based upon the facts of this case, we cannot say that the trial court erred in failing to merge the convictions for attempted murder and felonious assault. Accordingly, the third assignment of error is overruled.

## V. Consecutive Sentences

{¶ 36} The fourth assignment of error states as follows:

THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES

{¶ 37} Dwyer challenges the trial court's imposition of consecutive sentences. Specifically, he asserts the trial court did not engage in the correct statutory analysis for the imposition of consecutive sentences. He further asserts that the record does not support consecutive sentences.

{¶ 38} When reviewing felony sentences, appellate courts apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 7. Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either: (1) the record does not support the sentencing court's findings under certain statutes (including R.C. 2929.14(C)(4), which concerns the imposition of consecutive sentences); or (2) the sentence is otherwise contrary to law. *Id.* at ¶ 9, citing R.C. 2953.08(G)(2).

{¶ 39} R.C. 2929.14(C)(4) allows a trial court to impose consecutive sentences if it finds that (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one or more of the following three findings are satisfied:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶ 40} "[A] trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry[.]" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. "[W]here a trial court properly makes the findings mandated by R.C. 2929.14(C)(4), an appellate court may not reverse the trial court's imposition of consecutive sentences

unless it first clearly and convincingly finds that the record does not support the trial court's findings." *State v. Withrow*, 2016-Ohio-2884, 64 N.E.3d 553, ¶ 38 (2d Dist.).

{¶ 41} A review of the record demonstrates that the trial court made the required statutorily consecutive-sentence findings at the sentencing hearing and incorporated those findings into the judgment entry, including the factors set forth in R.C. 2929.14(C)(4)(b). The court cited Dwyer's "cold, calculated manner" and "callous indifference" in committing the offenses. Specifically, the court noted that Dwyer returned to Webb's apartment, with a gun, following the initial confrontation with Day. Dwyer brandished the gun in order to force Day to leave the apartment with him. The court noted that, instead of letting Day go when he ran out of the apartment, Dwyer chased him into the street. Once he found Day on the ground, Dwyer stood over him with the gun and tried to fire while aiming at Day's head. He then took possession of Day's shoes, belt and jacket before shooting him in the leg. Because the foregoing consecutive-sentencing findings were not clearly and convincingly unsupported by the record, the trial court's decision to impose consecutive sentences is not subject to reversal by this court.

{¶ 42} Dwyer also suggests that the trial court erred because it did not consider R.C. 2929.11 and R.C. 2929.12 in determining whether to impose consecutive sentences. However, in *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, the Supreme Court of Ohio explained that R.C. 2929.11 and 2929.12 "both clearly apply only to individual sentences[,]" and "[c]onsecutive service may not be ordered under R.C. 2929.14(C)(4) until the sentencing judge imposes * * * a sentence for each count by considering the purposes and principles of felony sentencing under R.C. 2929.11 and

R.C. 2929.12." *Id.* at ¶ 17. Thus, the Court concluded that consecutive sentences should be analyzed for compliance with R.C. 2929.14(C)(4), not R.C. 2929.11 or R.C. 2929.12. *Id.* at ¶ 18. Therefore, we find no error in this regard.

{¶ 43} The fourth assignment of error is overruled.


## VI.    Third Firearm Specification

{¶ 44} Dwyer's fifth assignment of error states:

THE TRIAL COURT ERRED IN SENTENCING APPELLANT FOR A THIRD

THREE YEAR FIREARM SPECIFICATION

{¶ 45} Dwyer asserts the trial court erroneously imposed a prison term for the firearm specification accompanying the felonious assault conviction.

{¶ 46} Although a trial court ordinarily may impose only one additional three-year prison term for multiple firearm specifications committed as part of the same act or transaction (*see* R.C. 2929.14(B)(1)(b)), an exception is created by R.C. 2929.14(B)(1)(g), which provides:

If an offender is convicted of or pleads guilty to two or more felonies, if one

or more of those felonies are aggravated murder, murder, attempted

aggravated murder, attempted murder, aggravated robbery, felonious

assault, or rape, and if the offender is convicted of or pleads guilty to a

specification of the type described under division (B)(1)(a) of this section in

connection with two or more of the felonies, the sentencing court shall

impose on the offender the prison term specified under division (B)(1)(a) of

this section for each of the two most serious specifications of which the

offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

{¶ 47} Here, Dwyer was convicted of attempted murder, aggravated robbery, and felonious assault and, as to each count, he was also convicted of a three-year firearm specification of the type described under R.C. 2929.14(B)(1)(a).   Therefore, the trial court was required to impose the three-year prison term specified under R.C. 2929.14(B)(1)(a) "for each of the two most serious specifications" of which Dwyer was convicted.   In short, R.C. 2929.14(B)(1)(a) obligated the trial court to impose separate prison terms for the three-year firearm specifications accompanying the attempted murder and aggravated robbery convictions.   Additionally, the court had the discretion to impose a prison term for the three-year firearm specification accompanying the felonious assault conviction.

{¶ 48} A review of the sentencing hearing transcript reveals that the trial court referred to the prison term imposed for the firearm specification accompanying the felonious assault conviction as "an additional mandatory term of 3 years mandatory incarceration * * *."   Tr. p. 276.   Likewise, the court's sentencing entry refers to the prison term for the third firearm specification as "an additional MANDATORY term of 3 years actual incarceration."

{¶ 49} Under R.C. 2929.14(B)(1)(g), the trial court had discretion to sentence appellant to a three-year prison term on the third firearm specification.   However, the court could not have been exercising its discretion if it believed, as it articulated both at the sentencing hearing and in its judgment entry, that the sentence was "mandatory." *State v. Bradford*, 8th Dist. Cuyahoga No. 105217, 2017-Ohio-8481, ¶ 40.

{¶ 50} Because the trial court concluded, contrary to R.C. 2929.14(B)(1)(g), that imposition of a three-year prison term on the third firearm specification was mandatory, the trial court erred by failing to exercise its discretion, thereby rendering that portion of Dwyer's sentence contrary to law. The fifth assignment of error is sustained.

### VII. Imposition of $10,000 Fine

{¶ 51} Dwyer's sixth assignment of error states:

THE TRIAL COURT ERRED IN IMPOSING A FINE OF $10,000.00

{¶ 52} Dwyer challenges the $10,000 fine imposed by the trial court. In support, he claims that the trial court did not consider his ability to pay the fine. Dwyer further asserts that the record demonstrates that he was indigent during the trial proceedings, as the public defender was appointed to represent him.

{¶ 53} Before a court may impose a financial sanction, it is required to consider the defendant's present and future ability to pay. R.C. 2929.19(B)(5). There are no specific factors the trial court must consider in its analysis, nor must it make any specific findings. *State v. Freeman*, 1st Dist. Hamilton No. C-180090, 2018-Ohio-4973, ¶ 10; *State v. Percy*, 8th Dist. Cuyahoga No. 109502, 2021-Ohio-1876, ¶ 19. "The record should, however, contain 'evidence that the trial court considered the offender's present and future ability to pay before imposing [a financial sanction.]' " *State v. Culver*, 160 Ohio App.3d 172, 2005-Ohio-1359, 826 N.E.2d 367, ¶ 57 (2d Dist.), quoting *State v. Robinson*, 3d Dist. Hancock No. 5-04-12, 2004-Ohio-5346, ¶ 17. "As long as the record contains some indication that the court considered the offender's present and future ability to pay, the court's imposition of a financial sanction is not contrary to law." *State v. McCants*, 1st

Dist. Hamilton No. C-190143, 2020-Ohio-3441, ¶ 12. In reviewing a trial court's imposition of a financial sanction, we apply the standard set forth in R.C. 2953.08(G)(2)(b), inquiring whether the imposition of the financial sanction is clearly and convincingly contrary to law. *State v. Dean*, 2018-Ohio-1317, 110 N.E.3d 739, ¶ 72 (2d Dist.); *McCants* at ¶ 10.

{¶ 54} We begin with the claim that Dwyer's indigency prevented a finding of an ability to pay the fine. The Tenth District Court of Appeals has addressed this issue, stating: "[a]n offender's indigency for purposes of receiving appointed counsel is separate and distinct from his or her indigency for purposes of avoiding having to pay a mandatory fine." *State v. Delgadillo-Banuelos*, 10th Dist. Franklin No. 18AP-729, 2019-Ohio-4174, ¶ 27, quoting *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, 922 N.E.2d 248, ¶ 79 (10th Dist.), citing *State v. Gipson*, 80 Ohio St.3d 626, 631-33, 687 N.E.2d 750 (1998). The court went on to state: "there is a 'difference between a defendant's inability to raise an initial retainer in order to obtain trial counsel and the ability to gradually pay an imposed mandatory fine over a period of time.' " *Id.*, citing *State v. Burnett*, 10th Dist. Franklin No. 08AP-304, 2008-Ohio-5224, ¶ 9, quoting *State v. Banks*, 6th Dist. Wood No. WD-06-094, 2007-Ohio-5311, ¶ 15. Thus, the court concluded an affidavit of indigency for the purpose of receiving appointed counsel cannot be used to demonstrate indigency for the purpose of avoiding payment of a fine after conviction. *Id.*

{¶ 55} We next address the issue of whether the trial court properly considered Dwyer's ability to pay the fines. There is no question the court was authorized to impose a fine. Further, the amount of the fine was well within the range of financial sanctions permitted by R.C. 2929.18(A)(3). Additionally, the trial court explicitly stated it had

considered Dwyer's present and future ability to pay, but it made no findings regarding this issue.[3]  We note that Dwyer did not object to the fine or request an opportunity to demonstrate his inability to pay a financial sanction.

{¶ 56} Although no PSI was ordered in this case and no financial information was introduced, there was information regarding Dwyer's ability to pay set forth within his own sentencing memorandum.  In his memorandum, Dwyer stated that he was gainfully employed at the time of the offenses and that he was capable of working.  At the time of sentencing, Dwyer was 22 years old, and he will be at least 56 when he is released.

{¶ 57} We have held that when the record contains some evidence that a defendant was previously employed, is young, and is in good health, he may be considered employable when he is released from prison, even if the prison term is lengthy. *State v. Dean*, 2018-Ohio-1317, 110 N.E.3d 739, ¶ 76-78 (2d Dist.).

{¶ 58} On this record, we cannot conclude that the trial court's decision was clearly and convincingly contrary to law. *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 23.  Accordingly, the sixth assignment of error is overruled.

## VIII.   Conclusion

{¶ 59} Since Dwyer's fifth assignment of error is sustained, the portion of the judgment imposing of a prison term for the firearm specification accompanying the felonious assault conviction is reversed, and the matter is remanded to the trial court for

---

[3] "A trial court's statement in a judgment entry that it considered the offender's present and future ability to pay a fine is evidence that the trial court considered the offender's ability to pay."  *Delgadillo-Banuelos*, 10th Dist. Franklin No. 18AP-729, 2019-Ohio-4174, at ¶ 35.

the sole purpose of resentencing Dwyer regarding the firearm specification attached to the felonious assault count. The judgment of the trial court is affirmed in all other respects.

. . . . . . . . . . . . .

WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Marcy A. Vonderwell
David R. Miles
Hon. Michael A. Buckwalter